[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 521 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 522 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 523 
The mortgage which the defendant holds stands duly recorded and unsatisfied upon the record; and *Page 524 
the plaintiffs, in order to escape from its lien upon the lands which they have purchased, are bound to show its extinguishment. Leitch being one of the executors of Kellogg, to whose estate the mortgage now in question belonged, and the executors then holding the mortgage, became the purchaser of the equity of redemption in the mortgaged premises under a foreclosure sale upon a subsequent mortgage, which was the next lien to that of the mortgage now in question; upon this state of facts it is now insisted that the two estates were not exempt from the operation of the law of merger. It has been so adjudged by the referee and by the supreme court, and I shall for the purposes of this case assume that there is no ground to question the correctness of the determination. The views of the referee and of the supreme court upon this point are briefly these: The executor has the legal authority absolutely to dispose of the title to a lease or a mortgage which comes to him from his testator; and when he acquires by purchase the reversion of the equity of redemption in his own right, a merger may take place, notwithstanding he holds the lease or mortgage en autre droit. If the union of the two estates in the same hand be brought about by act of the law, they are exempt from merger in case one estate is held en autredroit; but if it be brought about by the act of the party, the exemption does not exist.
Professional and perhaps judicial opinion was probably inclined to the position that merger could not take place under the latter circumstances, until the full discussion of the question inPreston on the Law of Merger; but since that discussion, although I am not aware of any later judicial determination upon the subject, the distinctions which he points out have been adopted in Williams on Executors, in Sugden on Vendors and inKent's Commentaries. It is hardly worth while to restate the authorities and arguments which are so accessible in the books cited. (Preston on Merger, ch. 12, p. 273, c.; 1 Williamson Ex'rs., 440, 441; Sugden on *Page 525 Vendors, ch. 15, § 2, pl. 5, 3rd vol., p. 20, 21; 4 Kent'sCom., 99-104.) Nor is it needful to express any opinion whether we should adopt those views, or apply them to the case of a mortgage held by one as executor who purchases the equity of redemption in his own right.
Taking the positions before stated to be law, the next inquiry must be whether a merger did take place. Leitch had in equity a right to elect whether the charge should remain separate from the equity of redemption, or whether the charge should sink into the general legal ownership of the land and become extinguished. This was expressly adjudged in the court for the correction of errors, in James v. Morey (2 Cow., 246), to be the law even where the charge and equity of redemption were in the same hand in the same right; much more should the right of election be maintained where they are held in different rights; for by that means, the party having the election may avoid committing an injury to the estate or right which he holds in a representative capacity. The deed to Eusebius Lawrence, which in terms subjects the lands conveyed to him to the payment of the mortgage in question, and the subsequent assignment of the bond and mortgage to the Bank of Syracuse, are irresistible evidence that when those instruments were executed Leitch intended that the charge upon the lands should continue to exist. The referee has found certain other facts, prior in point of time to those above mentioned, upon which he has decided that they, in construction of law, put an end to Leitch's right of election, and evinced his purpose to hold the land free from the mortgage. The most important of these facts is the conveyance by Leitch to Taylor of a large part of the lands by deed with warranty. This sale was brought about by Howlit and Freeman, who bargained with the purchaser in respect to it. They were induced to do so by declarations of Leitch to them, that if the land could be sold at a certain price it would pay the principal part of Freeman's creditors, and by his *Page 526 
promise to pay Howlit's claim against Freeman in case they would aid in selling the land. These facts are certainly evidence that Leitch intended to free the land conveyed to Taylor from the lien of the mortgage; but they do not involve the legal consequence that the charge should be extinguished in respect to the whole land. They have, in this respect, the same effect as a release by the owner of a mortgage of part of the land covered by it. In the words of Woodworth, J., in James v. Morey (p. 287), "until he made a disposition of the property, and until some person acquired an interest, he was at perfect liberty to consider the mortgage merged or not as might be most beneficial." The same principle extends to separate parcels of the land. What he conveyed not specially charged with the burthen, while the mortgage was in his hands, went free into the hands of the grantees. The lands now in question were expressly charged with the lien of this mortgage, and its amount was deducted from the purchase money. In respect to them, therefore, there is the clearest evidence of intention to preserve the lien of the mortgage. The plaintiffs had notice from the record of the existence of this mortgage, and also that the equity of redemption had come to Leitch, and that so the mortgage might be merged. They must be taken to have purchased with reference to this state of facts, and were bound at their own peril to ascertain whether in point of fact it was merged.
I am therefore of opinion that the decision below was erroneous, and that the judgment should be reversed and a new trial ordered.