GARLAND et ux. v. MAYHALL.—68 S. W. (2d) 482.

Middle Section.   July 29, 1933.

Petition for Certiorari denied by Supreme Court, January 13, 1934.

Roberts & Roberts, of Nashville, for plaintiffs in error, Garland.

Seth M. Walker, of Nashville, and Ben Welch, of Memphis, for defendant in error, Mayhall.

CROWNOVER, J. This was an action for damages for personal injuries and damage to automobile as the result of an automobile collision on the public highway near Memphis.

The defendants pleaded not guilty. The case was tried by the judge and a jury, and resulted in a verdict of $5,200, $5,000 for personal injuries and $200 for damage to the automobile, for the plaintiff and against the defendants.

Motion for a new trial having been overruled, defendants appealed in error to this court and have assigned errors, which are, in substance, as follows:

(1) There is no evidence to support the verdict.

(2) The court erred in charging the jury as follows:

"The law presumes that every witness has testified to the truth, and this presumption stands until the witness' testimony is reflected on in some way. One way is by cross-examination to involve the witness in discrepancies in the things about which he testifies; conflicting statements as to statements made here on the witness stand, and statements made elsewhere. Where it appears and where you believe that a witness has testified falsely as to even though an immaterial matter, then you would be warranted in disbelieving that testimony altogether, unless the witness be corroborated by other credible and reliable proof.

"It is the duty of the court to instruct you as to the law of the case. It is your duty to accept the law as given by the court and apply it to the facts as they have developed from the witnesses who have testified in the case."

(3) The court erred in charging the jury as follows:

"The proximate cause of an accident is that act or omission to act without which the accident would not have happened. It is the act or omission that is the efficient and procuring thing bringing about the thing that has happened. In simple language, it is the thing that causes it, whether that be an act of omission or commission; and if a person, in the exercise of ordinary care, could reasonably antici-

pate or foresee that what he did do or what he did not do, would probably result in an injury to himself or someone else, and that person failed to exercise ordinary care, under the circumstances and conditions as they existed then, that person, whether it be a plaintiff or defendant, would be responsible for those things that directly and proximately resulted from his negligent act.''

(4) The court erred in charging the jury as follows:

''It is the duty of all persons who operate automobiles on the highway to operate them in the exercise of ordinary care, and in operating a car in the exercise of ordinary care, it would be the duty of the person so operating it to be vigilant and on the lookout and see those things that an ordinarily prudent person would see and when he sees danger, or when he ought to see danger, to take ordinarily prudent precautions in order to avoid a collision. It would be the duty of the operator of a car to have his car reasonably well equipped with those things, appliances and devices that an ordinarily prudent person would have his car equipped with, and when he sees danger, or ought to see a dangerous situation, to use these appliances, things and devices in an ordinarily prudent way in order to save himself and someone else free from harm.''

(5) The verdict is so excessive as to indicate passion, prejudice, and caprice on the part of the jury.

The accident out of which this case arose was caused by the collision of two automobiles on the highway, one going east and one west. Mrs. Dorothy Garland, the driver of one, was driving her husband's automobile with his consent. Mrs. Mayhall was driving her husband's automobile and he was seated in the back seat.

The accident occurred at about 9 o'clock in the morning on July 15, 1931, on the Memphis-to-Bristol Highway, about fifteen miles east of Memphis.

Mrs. Garland was returning from Arkansas to Nashville, driving an Auburn automobile at the rate of forty to fifty miles an hour. She was accompanied by her mother and her cousin, a boy of about eleven years of age.

Mrs. Mayhall was going west towards Memphis, driving an Oldsmobile coach at the rate of twenty-five miles an hour. Her little son of five was seated by her, and her husband, the plaintiff, was seated on the back seat at the left. There were some blankets and a quilt on the seat by him. Mr. Mayhall was at that time employed as night watchman for a construction company. He had been on watch all night. Mrs. Mayhall, who was boarding in Memphis, had driven her brothers out to work somewhere in this vicinity and had gotten Mayhall and was driving him back towards Memphis to a tourist camp where he slept all day.

The highway at the point of the collision is a smooth concrete road eighteen feet wide with shoulders four and one-half feet wide. There

is a black stripe down the center of the road. The road is straight for a distance of several hundred yards, slightly downgrade from Memphis. About the middle of this section of road the two cars collided with each other. The car of Mrs. Garland struck the Mayhall car just behind the door, almost wrecking the car. Mr. Mayhall, seated on the back seat, was seriously cut by the broken glass of the Mayhall car.

1. There are two irreconcilable accounts of the accident—that of the plaintiff, and that of the defendants.

The evidence for the plaintiff is that the Mayhall car was being operated at the rate of about twenty-five miles an hour on its right side of the road, Mrs. Mayhall driving. The Garland car came over the hill traveling at the rate of fifty miles an hour. When the Garland car was about a hundred yards from the Mayhall car, it (the Garland car) swerved to its left across the center line of the road. Mr. Mayhall called his wife's attention to the fact. Mrs. Mayhall pulled over to her right towards the shoulder, taking her foot from the accelerator, which checked her speed somewhat as she was going upgrade. The Garland car swerved to its left again, striking the Mayhall car, which then had both right wheels on the shoulder. The Mayhall car was struck behind the door and almost demolished. The front bumper, headlights, and front fenders were uninjured. The front left wheel of the Garland car was broken down and the front left fender torn off. After the accident the Mayhall car was standing facing west and on the north or right-hand side of the road as it proceeded towards Memphis. The Garland automobile was turned almost completely around, headed towards Memphis, in the opposite direction from which it was going at the time of the collision.

The defendants' evidence is that as the Garland car came over a slight elevation in the road the Mayhall car was approaching in the center of the road; that when the cars were within a short distance of each other, the Mayhall car turned further to the left and began to come gradually towards the left side of the road as if the driver didn't know what she was doing; that Mrs. Garland put on her brakes and drove over as far as she could on the shoulder; that just before the collision Mrs. Mayhall turned her car sharply to her right and the Garland car crashed into the side of it; that immediately after the crash Mrs. Mayhall said: "Oh, my poor husband, he was asleep in the back of the car, he had been up all night watching and I was half asleep."

From the foregoing statement of the evidence it will be seen that if the plaintiff's account of the accident is true, then the statements of the defendants and their witnesses are untrue, and vice versa. In such a situation the case had to be submitted to the jury, and we are bound by the jury's verdict. Tubb v. Boyd, 13 Tenn. App., 432;

Jessie Carr Bourne v. Jerome Barlar, 17 Tenn. App., 375, 67 S. W. (2d), 751. Hence the first assignment of error must be overruled.

■ 2. Defendants' second assignment of error is that the court erred in charging the jury that if "a witness has testified falsely as to even though an immaterial matter, then you would be warranted in disbelieving that testimony altogether, unless the witness be corroborated by other credible and reliable proof." Defendants contend that this was an incorrect statement of the law and misled the jury; that the judge should have charged that if any witness willfully and intentionally testified falsely to a material matter, then they would be warranted in disbelieving that testimony, etc.

"The true rule is that the credibility of a witness, who knowingly testifies falsely as to one or more material facts, is wholly a matter for the jury. They may believe or disbelieve his testimony as to other facts according as they deem it worthy or unworthy of belief." 6 Jones on Evidence (2 Ed.), 4897, sec. 2473.

"The misstatements of fact, to warrant the jury in disregarding or distrusting other evidence of the witness, must be in regard to a material fact in the issue of the cause on trial, and it must be willfully and intentionally made." 3 Ency. of Evidence, 777, 778.

"As a general rule the fact that a witness has wilfully testified falsely as to a material matter lays him open to suspicion and justifies a jury in rejecting all of his testimony, except such part thereof as may be sustained by some evidence in corroboration of his statements." 40 Cyc., 2586-2588; Overall v. Parker (Tenn. Ch. App.), 58 S. W., 905.

"The fact that a witness has sworn falsely to a material fact does not authorize the disregarding of the rest of his testimony where the falsehood is due to mistake and not to wilfulness." 40 Cyc., 2588.

"The falsehood which will authorize the disregarding of a witness' testimony must be as to a material matter, or at least as to a matter which the witness believes to be material, and a witness is not to be discredited because of a discrepancy, or contradiction, or even deliberate falsehood as to an irrelevant or immaterial matter." 40 Cyc., 2589, 2590.

If a witness be shown to have sworn willfully, falsely, and corruptly in one material respect, his testimony may be rejected altogether, except in so far as it is corroborated by credible evidence. Tennessee Railroad v. Morgan, 132 Tenn., 1, 20, 175 S. W., 1148.

"Immaterial discrepancies in the statements of witnesses, do not affect their credibility, unless there is something to show that they originate in willful falsehood." Vincent v. State, 3 Heisk. (50 Tenn.), 120.

"The rule is that if a witness has willfully sworn falsely to a material fact, the jury may disregard his evidence altogether. To be authorized to do so, it must conclude from all the circumstances that

the evidence is unworthy of belief." Frierson v. Galbraith, 12 Lea, 129.

But in this case there was no contention that "any witness testified falsely as to any immaterial matter." The only contradictions were about material matters that were vital to the issues. As stated in discussing the first assignment, the plaintiff's witnesses stated that plaintiff's car was on its right side of the road and that defendant Mrs. Garland drove on the wrong side and collided with it; whereas, the defendants' witnesses deny this and say that Mrs. Mayhall drove over on her left and caused the collision. There were no contradictions of the plaintiff's witnesses by each other or confusion about their testimony. They all agreed. Likewise there was none on the part of the defendants' witnesses, and they agreed with each other. There was no attempt to impeach the character of any witness; hence the jury was left to weigh the evidence under the usual rules given in charge by the court with the exception complained of in this assignment of error; hence we are of the opinion that the instruction was a mere abstraction and that no prejudice could have resulted. Stepp v. Black, 14 Tenn. App., 153.

■■ 3. Defendants' third assignment of error, that the court's definition of "proximate cause," given to the jury, was incorrect, is not well made and must be overruled. As said by the Court of Appeals in the case of Power Packing Co. v. Borum, 8 Tenn. App., 162, 175, we think there is no reasonable possibility that the defendant was prejudiced by the omission of the word "immediately" from the first sentence. We are also of the opinion that the use of the word "thing," instead of "accident," by the judge did not mislead or confuse the jury, and was a mere inadvertence. It is the duty of the defendant to call the court's attention to an inadvertence, which was not done in this case. Lebanon v. Jackson, 14 Tenn. App. 15; Hamilton v. Carter, 14 Tenn. App., 337.

■ 4. Defendants' fourth assignment complains of a sentence of the judge's charge which is as follows: "It would be the duty of the operator of a car to have his car reasonably well equipped," etc., as is set out above in the fourth assignment of error. It is insisted that there was no specific averment in the declaration covering such acts of negligence, and in the absence of such averments evidence of such facts is inadmissible; but we think this contention is not well made for two reasons:

First, because several counts of the declaration charge negligence generally, such as failure to keep a proper lookout ahead, and that the driver negligently drove her automobile against the automobile in which plaintiff was riding, as a result of which plaintiff received the injuries complained of. It was charged in other counts of the declaration that the defendants' car was being driven in violation of the statute (section 1, chap. 82, Pub. Acts 1931), in that she drove an

automobile at an unreasonable rate of speed on the wrong side of the road and lost control thereby causing the accident. It has been held in railroad cases that evidence of specific defects is admissible under general averment of negligence. Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415, 425, 426, 58 S. W., 737; Middle Tenn. Railroad Co. v. McMillan, 134 Tenn., 490, 184 S. W., 20.

Second, this identical sentence was passed upon by the court in the case of Tennessee Electric Power Co. v. Ogle (not for publication), Davidson County Law, opinion of the Court of Appeals filed at Nashville February 24, 1928, in which the court held that this instruction should have been given to the jury in defining the duties of the parties in the exercise of ordinary care:

"The jury could not reasonably have understood this instruction, given in such connection, otherwise than as referring to the things that ought to have been seen under the circumstances. This part of the charge referred particularly to the duty to exercise ordinary care. The court said correctly that ordinary care is just such care as an ordinarily prudent person would exercise under the existing facts and circumstances. Of course it is the duty of the driver of an automobile to see what ought to have been seen under the circumstances. Chattanooga Station Co. v. Harper, 138 Tenn., 579, 199 S. W., 394; Railroad Co. v. Ross, 2 Tenn. App., 384. It is insisted that in this instruction injustice was done to the defendant in making it so broad in that one single sentence, because the very question arose upon the trial whether or not it could be said that the driver of the truck in watching intently the two children to his left should also have seen the little child who had gone to a place of safety to his right. But as heretofore shown there was evidence tending to show that the driver could have seen the child return into the street and stoop down in time to stop the truck and avoid the injury. His own admission that he could stop it in six feet is very material evidence of this kind. Therefore it was proper to instruct the jury that he should have seen what ought to have been seen in that situation, leaving it to the jury as he did to determine whether or not he was guilty of a negligent act or omission to act."

The other part of the charge complained of in that case was as follows:

"It is their duty to have their vehicles or machine or automobile or truck well equipped with those things and appliances, brakes, horns and other things that an ordinarily prudent person would have his machine equipped and supplied with, and when he sees danger do all those things that an ordinarily prudent person should or ought to do under the then existing circumstances in order to avoid a collision."

The court said:

"As aforesaid, this instruction was embodied in that part of the charge relating particularly to ordinary care and the duty to exercise it."

It will be observed that the court was giving in this paragraph of the charge the duty of drivers of automobiles on the highway, in general, and this paragraph applied as well to the plaintiff as to the defendants. There is no evidence in the record that both cars were not reasonably well equipped with brakes, etc. In fact, the record shows that defendant's automobile was supposed to be a new automobile in perfect condition and the brakes were in perfect condition, hence the defendants were not prejudiced by the instruction.

■■ 5. The verdict of the jury was for $5,200, $5,000 for personal injuries sustained by Mayhall, and $200 for damages to his automobile. The evidence was that the market value of the automobile before the accident was $250 and that its value after the accident was practically nothing, and it was sold for $25. Therefore $200 was reasonable damages. We think $5,000 is not unreasonable for the injury that Mayhall received. He was a young man twenty-five years of age. The cut that he received behind his left ear severed the facial nerve that controlled the left side of his face, resulting in partial paralysis of that side of his face, which condition physicians testified was permanent. Because of the paralysis he cannot wink his left eye, and this allows foreign particles to get into his eye. He cannot close that eye well, which has resulted in inflammation of his eye. He has difficulty in eating. He doesn't taste some foods, and food becomes lodged in the left side of his mouth and has to be removed with his finger. When he laughs his face is drawn to one side. As this condition is permanent, we think $5,000 damages is not unreasonable.

It results that all the assignments of errors will be overruled, and a judgment for $5,200 principal with interest from July 22, 1932, to the present, will be entered in this court in favor of Mayhall and against J. S. Garland and wife, Mrs. Dorothy Garland. The cost of the cause including the cost of the appeal is adjudged against Mr. and Mrs. Garland and the sureties on their appeal bond.

Faw, P. J., and DeWitt, J., concur.