JOHNSON *v.* NELMS.

(*Nashville,* December Term, 1936.)

Opinion filed January 16, 1937.

CARLTON N. WILKES, of Memphis, for plaintiff in error.

FRANK B. GIANOTTI, JR., and CHARLES M. BRYAN, both of Memphis, for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

It appears from the transcript that Lula Johnson was adjudged insane and committed to the Western State Hospital at Bolivar by the probate court of Shelby county on October 7, 1935, and that Ruth Nelms was appointed as her guardian on June 16, 1936, at which time the said guardian collected $400 insurance resulting from fire damage to her ward's property.

On July 28, 1936, Walter Johnson, son of Lula Johnson, filed his petition in the insanity case just referred to, in which he alleged that the American Building & Loan Association had made a loan to his mother on the property burned, and that for six years he had made all payments on said house under an agreement with his mother that the property should be his. That after paying the loan to the association there is left in the hands of the guardian the sum of $163, which sum he asks the court to direct the guardian to pay to him, after deducting costs, including compensation to the guardian.

The guardian demurred to the petition upon the ground that it appears that the commitment, and her appointment as guardian, was made pursuant to chapter 17, Acts of 1919, as amended, Code sections 4433-4499, and that under a proper interpretation of said Act it should be held that she is not a general guardian, her duties being limited to seeing that her ward is maintained and supported during her disability. The further point is made that this act was not intended to repeal the statutes relating to persons of unsound mind, sections 9613-9638, which authorize jury trials in the chancery and county courts in a lunacy proceeding, but was passed for the benefit of the state hospitals; that, since the Act of 1919 makes no provision for a trial by jury, or for an appeal, if construed as a general insanity law, it conflicts with article 1, section 6, of our Constitution, which provides "That the right of trial by jury shall remain inviolate."

By chapter 145, Public Acts of 1935, jurisdiction in lunacy proceedings was conferred upon the probate court of Shelby county.

The record in the case under consideration is deficient in several particulars, the petition containing no specific averments as to the commitment proceeding, and is not signed by the petitioner nor his counsel, although it is verified by petitioner. But, since it was filed in the original case, that record will be considered in connection with the demurrer upon the authority of Gibson's Suits in Chancery (Chambliss Edition), 266-267, as follows:

"But where a bill, not original, refers to a record in the original cause, and in effect makes such record, or any part thereof, a part of itself, then such a record,

or part, may be looked to on the argument of a demurrer to such a bill.''

The reference is rather meager, being as follows:

"In the Probate Court of Shelby County, Tennessee.

"In Re: Estate of Lula Johnson
"Ruth Nelms, guardian
"No. 37781 R 41
"Petition to Pay Out Funds
"To the Honorable Samuel O. Bates, Holding the Probate Court of Shelby County, Tennessee.''

The petitioner then alleges that his mother, Lula Johnson, is confined at the Western State Hospital at Bolivar, and that her estate consists of the sum of $163, now in the hands of her guardian. No question being raised as to the insufficiency of this reference, we will treat it as sufficient and dispose of the case upon its merits.

Chapter 17, Acts of 1919, is quite lengthy, and we will copy herein only such sections as we deem pertinent to this inquiry. As incorporated into the Code they are as follows:

4451. "All inquisitions of lunacy for the purpose of committing a person to a state hospital shall be held by the county judge or chairman of the county court of the county of which the person is a resident, who shall hear and determine all cases brought before him in accordance with the provisions of this law, and at any and all times, and they shall be heard and determined as soon as practicable after complaint is made.''

4452. "If any person suspect another of being insane, he may make complaint under oath to the clerk of the county court of the county of which the person suspected is a resident, stating such facts in such affidavit as may be required.''

4453. "The clerk shall thereupon issue a legal process ordering the person so suspected and named in such complaint to be brought before the county judge or chairman at the time and place named therein, that his sanity or insanity may be inquired into."

4455. "Or if any relative or friend of the person so suspected will serve such legal process and cause such suspected person to be brought before the county judge or chairman, he may be authorized to do so."

4456. "The officer or person to whom the legal process is directed shall take the suspected person into his custody and bring him before the county judge or chairman at the time and place named therein."

4457. "The county judge or chairman shall proceed with the hearing to determine whether the person in question is insane or not. Before proceeding, however, the court shall appoint a guardian *ad litem* to look after the interest of the person in question, but said guardian *ad litem* need not be, but may be, an attorney at law, but he shall be present at the hearing and manage the case in behalf of the person suspected."

4458. "The county judge or chairman shall have the right to summon such witnesses as are necessary and to administer oaths and hear testimony as in other cases. The county judge or chairman shall be the judge of the number and character of witnesses and proof to be presented, except there shall be included at least two reputable physicians, who are duly authorized to practice medicine in the state, and who shall have had at least three years actual practice, each of whom shall be required to make separately a personal physical and mental examination of the suspected person, and each physician shall make in writing a certificate of the result of such

examination in the form required by the commissioner; each certificate shall be sworn to by the physician and shall be considered as evidence on the hearing. Said physicians may also be examined orally on the hearing.''

4478. ''When a person is found insane and committed to a state hospital, as hereinbefore provided, this shall be sufficient grounds in all cases for the appointment of a guardian by the county court of which said patient is a' resident, and it shall be the duty of the court to appoint a guardian in all such cases when application is made by superintendent of the hospital or any one else. When any guardian of a patient committed to a hospital fails and refuses to comply with requirements of the institution and becomes indebted thereto, the condition of the estate being such that the amounts could be paid, it shall be sufficient ground for the removal of said guardian, and an application may be made by the superintendent of the hospital to the county court for his removal on these grounds, and if the facts be found as alleged, he shall be removed and another appointed.''

This act does not contain language expressly repealing previous statutes relating to insane persons. Our statute providing for jury trials in lunacy proceedings has been the law in this state since 1797, and we are of the opinion that had the Legislature intended to repeal this very important and salutary statute of such long standing it would have done so by apt language evidencing that intention. The Legislature evidently intended the act of 1919 as an accumulative or additional remedy for hearing such cases; a simple, expedient, and inexpensive procedure where little or no doubt exists as to the insanity of the party under investigation. It did not purpose to deny a jury trial, where demanded, in

so important a matter. If it was intended to deny the right to a trial by jury in such a case, then the act would be unconstitutional. Repeals by implication are never favored, and an act will be construed, if possible, so as to preserve its validity. There is really no conflict in the two methods provided for passing upon the sanity of a person. He can have the question decided by a jury or by the court. If the party is too demented to make a choice, if that in and of itself is not sufficient to indicate his mental deficiency, then a jury can be demanded by his counsel or his guardian *ad litem,* and it is their duty to make such demand where any doubt exists as to the mental status of his client.

In 16 Ruling Case Law, 194, it is said: ''The constitutional right to a trial by jury applies only to cases in which the prerogative existed at common law, or was secured by statute at the time the constitution was adopted.''

The authorities are in conflict as to whether in a lunacy proceeding a right to a trial by jury existed at common law. 35 C. J., 182; annotation in 91 A. L. R., beginning on page 88. The author of the annotation just referred to states that this disparity of views may be in some measure explained by the following statement of the court in *Ex parte O'Connor,* 29 Cal. App., 225, 155 P., 115, 120: ''In such a proceeding the property rights of the alleged incompetent were to some extent involved, and quite logically, in harmony with the recognized and zealously guarded polity of the British government, after its establishment upon the conquest of William the Conqueror, with respect to the rights of property and the right to a trial by jury where those property rights are affected or questioned, the natural and appropriate mode for de-

termining whether the subject's property should be taken from him, or, substantially, escheated to the crown in such cases, was by a jury of disinterested persons of good common intelligence. As we have already shown, after provision was made for the safe-keeping and preservation of the incompetent's estate and the issues and profits thereof, to be returned to him upon his restoration or devolved upon his heirs should he die without recovering from his malady, there was no longer allowed a trial of the question of the alleged incompetent's idiocy or insanity by a jury, but the whole question was committed for determination to a court or a committee, under the direction of the court, without the intervention of a jury. And this latter system prevailed long prior to the time when Sir William Blackstone gave to the civilized world his justly celebrated and splendid commentaries on the English common law.''

In Cooley's Blackstone (4 Ed.), vol. 1, p. 261, it is said: ''By the old common law there is a writ *de idota inquirendo* (of inquiring concerning an idiot), to inquire whether a man be an idiot or not: which must be tried by a jury of twelve men.'' The same author, on page 263, says: ''The method of proving a person *non compos* is very similar to that of proving him an idiot.'' The same view is expressed by Buswell on Insanity, p. 35, and in Pomeroy's Equity Jurisprudence, sec. 1312.

We are further of the opinion that the right to a trial by jury was secured by statute in this jurisdiction at the time our Constitution was adopted in 1796. The Legislature of North Carolina, by chapter 15, section 3, Acts of 1784, and chapter 1, section 46, Acts of 1794, provided that idiocy or lunacy should be ascertained by the inquisition of a jury.

Article 10, section 2, of our Constitution of 1796 provides:

"All laws and ordinances now in force and use in this Territory, not inconsistent with this constitution, shall continue to be in force and use in this State, until they shall expire, be altered, or repealed by the legislature."

The Legislature, by chapter 41, section 1, Acts of 1797, enacted an insanity statute which has been the law in this state to the present time, section 9614 of the Code of 1932, and which is as follows:

"Upon information made to the county court that any idiot, lunatic or person of unsound mind resides within the jurisdiction thereof, the court shall order the sheriff to summon a jury of twelve freeholders to ascertain, by inquisition, the idiocy or lunacy, and the property and estate of the idiot or lunatic, and make return thereof to the court at that or the next succeeding term."

It follows that from either viewpoint, under our Constitution, the accused in a lunacy proceeding is entitled to have a jury pass upon his sanity. The Constitution, however, does not make a jury trial mandatory, but simply secures the right to demand such a hearing.

Our Code provisions, with respect to a demand for a jury in civil cases, are as follows:

8734. "When any civil suit is originally brought in any of the courts of record, which is triable by jury, either party desiring a jury shall demand a jury in his first pleading tendering an issue triable by jury, or he shall call for the same on the first day of any term at which the suit stands for trial, and have an entry made on the trial docket that he calls for a jury; and unless such demand is made and entry thereof on the trial

docket, it shall be the duty of the court to try the case without a jury."

8736. "A failure so to demand or to call for a jury shall be held, conclusively, an agreement of the parties to submit all issues and questions of fact to the decision of the judge without a jury; and, if such demand or call is so made, the clerk shall place the cause wherein the demand or call is made, upon a docket to be styled 'Jury Docket.'"

The county court is a court of record. Section 10052, subsection (5), Code 1932.

■ An inquisition of lunacy is a civil proceeding. 32 C. J., 627; *In re Moynihan*, 332 Mo., 1022, 62 S. W. (2d), 410, 416, 91 A. L. R., 74; *Sporza* v. *German Sav. Bank*, 192 N. Y., 8, 84 N. E., 406; *White* v. *White*, 108 Tex., 570, 196 S. W., 508, L. R. A., 1918A, 339; *Cogan* v. *Cogan*, 202 Mass., 58, 88 N. E., 662; *Baum* v. *Greenwald*, 95 Miss., 765, 49 So., 836; *State ex rel. Deeb* v. *Fabisinski*, 111 Fla., 454, 152 So., 207, 156 So., 261.

■ We conclude, therefore, that a jury trial in a lunacy proceeding is not mandatory, but may be had upon demand by the party suspected or his counsel. While the Act of 1919 contains no provision for a jury trial, the constitutional provision (article 1, sec. 6) as to the right to a trial by jury must be read into the act. It is the duty of the trial court to see that the rights of the party whose sanity is questioned are fully guarded and protected; that in the absence of counsel, a competent and disinterested member of the bar is appointed to represent him; that only physicians of high character and efficiency are appointed to examine the defendant. The hearing should not be formal and perfunctory, but accorded the same dignity and painstaking investigation

that is accorded any other class of litigation. Says the Supreme Court of Missouri in *In re Moynihan, supra*:

"However, even though an insanity proceeding is primarily for the benefit of the person suspected of being insane, nevertheless depriving a person of his liberty and his freedom to do as he sees fit with his property and putting him under the stigma of irrationalism is such a serious matter that there should be, for the person whose sanity is inquired into, every proper safeguard."

While the procedure outlined in the act of 1919 is subject to abuse, we believe that it provides sufficient safeguards to protect the rights of those under investigation, if the trial courts are zealous in seeing that they are given effect.

 In view of what we have said, our conclusion is that the Act of 1919 is not unconstitutional, and that a guardian appointed thereunder is a general guardian.

The trial court overruled the demurrer, and his decree will be affirmed, and the case remanded for further proceedings.