## WALTERS v. STATON.—111 S. W. (2d) 381.

Middle Section. August 14, 1937.

Petition for Certiorari denied by Supreme Court, December 17, 1937.

Cornelius, McKinney & Gilbert and Henry C. Foutch, all of Nashville, for plaintiff in error Walters.

Lindsey M. Davis and Trabue, Hume & Armistead, all of Nashville, for defendant in error administratrix.

CROWNOVER, J.  This is an action for damages for the wrongful death of Neill McNeill in an automobile collision at a street intersection in the city of Nashville.

The declaration contained four counts.  In the first count the plaintiff administratrix averred common-law negligence on the part of the defendant, Walters, in that he was operating his automobile at an excessive and dangerous rate of speed, did not have the same under control, was not keeping a lookout ahead, and

failed to give any warning or signal of his approach; in the second, violation of a city ordinance prescribing the speed of motor vehicles in the city; in the third, violation of Code, section 2681, making it unlawful to drive vehicles on the streets and highways of the state in a heedless, careless, and reckless manner; and in the fourth, violation of an ordinance requiring vehicles to keep as near the right-hand curb as possible.

The defendant pleaded the general issue of not guilty.

The case was tried by the judge and a jury. At the close of the plaintiff's evidence the defendant moved the court for a directed verdict on the ground that the plaintiff had failed to show any negligence on the part of the defendant, which motion was overruled. At the conclusion of all the evidence the defendant moved the court for a directed verdict on the ground that the plaintiff's intestate was guilty of contributory negligence which was one of the direct and proximate causes of his death, which motion was overruled, to which the defendant excepted. The jury returned a verdict for $10,000 in favor of the administratrix and against the defendant Walters.

Motion for a new trial having been overruled the defendant appealed in error to this court and has assigned errors as follows:

(1) There is no evidence to sustain the verdict.

(2) The court erred in declining to grant the defendant's motion for peremptory instructions made at the close of the plaintiff's evidence.

(3) The court erred in refusing to grant the defendant's motion for a directed verdict, made at the conclusion of all the evidence, on the ground that the plaintiff's intestate was guilty of proximate contributory negligence and violation of the ordinances of the city of Nashville with reference to speed, speed at intersections, stopping at an arterial highway, driving as near the right-hand curb as possible, and violation of the state statute prohibiting reckless driving.

(4) The verdict of the jury is so excessive as to indicate passion, prejudice, and caprice on the part of the jury.

The facts of the case as shown by the record are:

The plaintiff's intestate, Neill McNeill, was a young man of the age of about 30 years. He was a musician and his regular occupation was playing in an orchestra. The orchestra of which he was a member had temporarily disbanded, and for several weeks before this accident he had been working at a local retail store.

On Saturday night, March 28, 1936, he left the store at about 10 o'clock and went to his sister's home on Golf Club lane and borrowed his brother-in-law's 1934 Ford automobile in order to go to the Wagon Wheel, a local night club, to interview the orchestra leader about a position with the orchestra.

While at the Wagon Wheel he met a friend, Royalty, who invited him to his home. Royalty, whose home was on Belmont avenue, left the night club at about 1 o'clock and went home and went to bed.

Apparently McNeill went to Royalty's home, saw no lights, and started to Golf Club lane by way of Jones avenue, the most direct route.

At about 2 o'clock in the morning, on March 29th, he was driving west on Jones avenue, and the defendant, Harry Walters, Jr., was driving north, towards Nashville, on Natchez trace, when the two automobiles collided in the intersection of the two streets.

The defendant, Harry Walters, Jr., 22 years of age, was driving a 1936 Ford coupé. He had been to a dance and had a late date afterwards, and was on his way to pick up another boy and then go home.

Natchez trace (or Twenty-Eighth avenue, south) leads north and south, and is about 40 feet wide. It is an arterial highway and stop signs are erected at the margin on each side.

Jones avenue extends east and west and intersects Natchez trace at right angles; it is about 30 feet wide.

Natchez trace, south of Jones avenue, is downgrade to Jones avenue. Jones avenue is level as it approaches Natchez trace on the east side and extends upgrade on the west side.

There was a water meter in the intersection 8 or 9 feet from the southwest corner.

When McNeill's automobile had reached the water meter it was struck by Walters' car.

McNeill's automobile was struck on the left side in about the center. The imprints of Walters' headlights were clearly visible on the left door and on the body just over the left rear fender.

The injuries to Walters' car were on the front—the radiator, headlights, bumper, and right front fender. Although Walters struck McNeill's car on the left side of the road (Walters' left), the blow, according to the pictures, was struck by the right side of Walters' radiator and his right fender and headlight.

McNeill's care evidently received a terrific blow. The frame was bent, the axles bent, the seats were pulled loose from the floor, the steering wheel was cracked or crushed, and the left door was sprung or knocked out about 14 inches. The right rear wheel was broken or crumpled. No damage was done to the front.

The noise of the impact was heard 8 blocks away.

After the collision McNeill's car was beyond the curb on the northwest corner, against some telephone posts, and was headed east.

There was a puddle of blood by one of the telephone posts, and

there was blood under the driver's seat and under the running board.

There were marks about a foot and a half long in the intersection, near the water meter, indicating that the McNeill car had slid sideways after being struck.

There were skid marks on Natchez trace, beginning 50 feet south of the center of the intersection, in about the center of the street, and continuing, bearing to the left or west, to the water meter, to the scrape marks (which was the point of collision), then on to a point on the west (left) curb about 35 feet north of Jones avenue.

There were no skid marks leading out of Jones avenue.

There were no other cars on the highway at the time of the collision. The only witnesses to the accident were Walters and McNeill, who is dead.

McNeill was familiar with this route and knew that Natchez trace was an arterial highway. He was a good driver and a sober young man.

1 and 3. The defendant, Walters, admits in his brief negligence on his part—that he was driving recklessly in violation of the statute and that he was violating the city ordinance requiring him to drive as near the right-hand curb as possible, but he contends that McNeill was guilty of contributory negligence, as a matter of law, in violating city ordinances (a) limiting the speed of automobiles to 30 miles an hour; (b) limiting the speed at street intersections to 15 miles an hour; (c) requiring automobiles to stop at an arterial highway; (d) requiring automobiles to drive as near the right-hand curb as possible; and (e) in violating a state statute prohibiting reckless driving; therefore he contends there can be no recovery, and the trial judge should have directed a verdict.

Harry Walters, Jr., the defendant, is the only eye witness.

There is a presumption that McNeill complied with the law. 9 Ency. of Evidence, 917, 918.

And there is a presumption that he exercised ordinary care for his own protection. 45 C. J., 1155-1162; 22 C. J., 94, 95; 20 R. C. L., 199; 1 Jones on Evidence (2 Ed.), 421, 422, sec. 257; Moore on Facts, 529-537; Tennessee Central Ry. Co. v. Herb, 134 Tenn., 397, 401, 183 S. W., 1011; Tennessee Cent. Ry. Co. v. Dial, 16 Tenn. App., 646, 651, 65 S. W. (2d), 610.

But the presumption will only be indulged in the absence of proof, and the weight of the presumption simply makes out a prima facie case which disappears on the introduction of material evidence on the proposition. The presumption itself cannot be weighed against the evidence. Tennessee Cent. Ry. Co. v. Dial, supra.

The only testimony rebutting the presumption is that of Walters,

and he contradicts himself to some extent and is also contradicted by the physical facts.

Walters testified that when he first saw McNeill's car he (Walters) was 25 feet south of the intersection. This is shown to be untrue by the testimony of a number of witnesses that the skid marks of his tires began 50 feet south of the intersection. He also testified that he was traveling at the rate of 25 miles an hour and slowed down to 10 miles when he saw McNeill. H. B. Stone, an automobile repairer, testified that an automobile would have to be traveling at the rate of 45 miles an hour to make skid marks like these. Walters testified that McNeill was traveling at the rate of 60 miles an hour, which is contradicted by the physical facts. If Walters was 50 feet from the intersection, traveling at the rate of 25 miles an hour, and McNeill entered the intersection driving at the rate of 50 or 60 miles an hour, McNeill's car would have crossed the intersection before Walters reached it. Even if Walters' speed was 45 miles an hour, McNeill could have crossed the intersection of 40 feet before Walters reached it.

Testimony which is contradicted by physical facts has no probative force. Union Traction Co. v. Todd, 16 Tenn. App., 200 204, 64 S. W. (2d), 26; Nashville, C. & St. L. Ry. v. Perry, 13 Tenn. App., 268, 274; Klein v. Illinois Cent. R. Co., 4 Tenn. App., 563; Nashville, C. & St. L. R. R. v. Justice, 5 Tenn. Civ. App., 69.

Walters' testimony as to whether McNeill stopped at the stop sign is confusing. He testified that McNeill did not stop, then his later testimony seems to mean that he did not see him until he was in the intersection. He first testified: "Just as I approached the intersection of Jones Avenue, hardly before I knew what happened, a car loomed out of the night and just flew across in front of me." He next testified that McNeill did not stop at the stop sign; and, later, that when he first saw McNeill's car it was close to the stop sign, somewhat east of the stop sign, and he thought he was going to stop. He then said that McNeill was going into the intersection when he saw him. He testified afterwards: "He was coming down Jones about to cross twenty-eighth and just was going so fast he just came on across. . . . I believe he was about the stop sign, going pretty fast. . . . I saw him and he was coming across the intersection real fast."

All these contradictions go to the credibility of this witness and to the weight of his testimony. Wright v. Bridges, 16 Tenn. App., 576, 65 S. W. (2d), 265; Welch v. Young, 11 Tenn. App., 431, 434; Frank v. Wright, 140 Tenn., 535, 205 S. W., 434, 435.

"Ordinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true; but, if the witness relied upon to establish a given fact be discredited or im-

peached, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions. There must, it is true, be a substantial and more than colorable claim that the witness has been discredited; but, where this may by the jury be deemed to be sufficiently shown, the trial judge does not err in submitting the case to the jury.'' Frank v. Wright, supra.

As held in the cases of Frank v. Wright, supra, and Welch v. Young, supra, testimony may not be disregarded arbitrarily or capriciously, and ordinarily the testimony of a witness who is not contradicted, impeached, or discredited, must be accepted as true, but if the witness relied upon to establish a given fact be impeached (by evidence directed against his general character for veracity) or discredited in any of the modes recognized by law, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions.

''It is within the discretion of the jury wholly to reject the testimony of a witness whom they believe to have testified falsely in some particulars, or to accept some of his statements and to reject others. The true rule is that the credibility of a witness, who knowingly testified falsely as to one or more material facts, is wholly a matter for the jury. They may believe or disbelieve his testimony as to other facts accordingly as they deem it worthy or unworthy of belief.'' 6 Jones on Evidence (2 Ed.), 4897, sec. 2473,

''As a general rule the fact that a witness has wilfully testified falsely as to a material matter lays him open to suspicion and justifies a jury in rejecting all of his testimony, except such part thereof as may be sustained by some evidence in corroboration of his statements.'' 40 Cyc., 2586-2588; Overall v. Parker, Tenn. Ch. App., 58 S. W., 905; Garland v. Mayhall, 17 Tenn. App., 449, 453, 68 S. W. (2d) 482.

Whether McNeill was exceeding the speed limit at an intersection; whether he stopped at the stop sign; and whether he was driving as close to the right-hand curb as possible, were questions for the jury under the facts and circumstances shown in this case. And whether these acts constituted contributory negligence and were the proximate cause of the accident were also questions for the jury. Hall Grocery Co. v. Wall, 13 Tenn. App., 203; Collins v. Desmond, 1 Tenn. App., 54; Phillips-Buttorff Mfg. Co. v. Mc-Alexander, 15 Tenn. App., 618, 640, 641.

These questions being for the jury, and the jury having found that Walters was guilty of negligence and McNeill was not guilty of contributory negligence, this court cannot disturb the finding of the jury.

For the reasons above stated, we are of the opinion that the

trial judge correctly overruled the defendant's motion for a directed verdict at the conclusion of the evidence.

The defendant's first and third assignments of errors are therefore overruled.

■ 2. The defendant made a motion for a directed verdict at the close of the plaintiff's evidence, which was overruled. He then proceeded to introduce evidence himself. He now assigns as error the court's action. This assignment is overruled, as he waived his motion by introducing evidence. Tennessee Procedure by Higgins & Crownover, section 1390.

■■ 4. We are of the opinion that the verdict is not excessive. McNeill was a young man of the age of 30 years, in good health, and of exemplary character, and capable of earning a good salary. The question of damages was one peculiarly for the jury. Power Packing Co. v. Borum, 8 Tenn. App., 162.

All the assignments of errors having been overruled, it results that the judgment of the lower court is affirmed, and judgment will be entered in this court in favor of the plaintiff administratrix and against the defendant Harry Walters, Jr., for $10,000, with interest thereon from November 10, 1936, together with the costs of the cause in the court below. The costs of the appeal are adjudged against Harry Walters, Jr., and the sureties on his appeal bond.

Faw, P. J., and Felts, J., concur.