# SHOOK & FLETCHER SUPPLY COMPANY et al. v. CITY OF NASHVILLE. —338 S. W. (2d) 237.

Middle Section.   April 1, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

340

Waller, Davis & Lansden, Wm. Waller, Nashville, Howard, Davis, Bouldt & Hunt, Nashville, Jas. I. Vance Berry, Nashville, for plaintiffs in error.

Robert Jennings, Kenneth Harwell, Thos. W. Overall, Nashville, for defendant in error.

SHRIVER, J. The parties will be referred to as they appeared in the Court below, to wit; City of Nashville as petitioner and Shook & Fletcher Supply Company, et al., as defendants.

## I

This is an eminent domain proceeding wherein the City of Nashville, as petitioner, sought to condemn a part of the defendants' property for a right-of-way to construct a street or boulevard in connection with the Capitol Hill Redevelopment Project.

The right to take was admitted and there was only one question involved, namely, the amount to be paid the defendants for the property taken.

The amount fixed by the jury of view was $143,150 but the defendants were dissatisfied with this amount and appealed to the Circuit Court where the case was tried before a regular jury.

After the introduction of a number of witnesses, including several experts on real estate values, the jury reported that the compensation due the defendants was

$180,000. The trial Court at the hearing of a motion for a new trial suggested a remittitur of $15,000 which was accepted under protest and an appeal in error perfected to this Court and assignments filed directed to the action of the trial Judge in suggesting the remittitur.

The City of Nashville, petitioner below, also perfected an appeal, which is considered as an appeal in error, assigning certain errors in the charge of the Court to the jury.

## II

### Assignments of Error

"I. The trial court erred in instructing the jury as follows:

" 'When it appears that a witness has thus falsely testified, you will disregard his or her evidence entirely except for such portions which are corroborated by other reliable and credible proof.' (B.E. p. 174.)

"This was error because such instructions infringe upon Article 6, Section 9 of the Constitution of the State of Tennessee, reserving to the jury the exclusive function of determining the weight of evidence.

"II. The trial court erred in instructing the jury as follows:

" 'There are two methods of computing the amount of compensation due the Respondents, as brought out in the testimony of the witnesses who have testified. The first is the income basis; second, comparable sales.

" 'In either case, the conditions that prevailed upon the date of taking must be the basis of your considerations. The most profitable, probable use of the property under those conditions will determine the rental or sale value.' (B.E. p. 176.)

\* \* \* \* \* \*

" 'Your consideration of these values may be predicated on the income approach, or the comparable sales approach.' (B.E. p. 178.)

"The foregoing instruction was erroneous because there is only one method of computing the amount of compensation due the owner in a condemnation case, namely, the owner is entitled to the fair market value of the land taken, and in determining the fair market value of the property, everything in the proof which tends to enhance or depreciate its worth, should be taken into consideration by the jury.

"The foregoing instruction was also erroneous because notwithstanding the fact that the jury may consider competent evidence of comparable sales and competent evidence of the property's income, the jury must be given the opportunity to consider all of the proof concerning the property, which either tends to enchance or depreciate its worth.

"The foregoing instruction invited the jury to enter into another field of inquiry as to the value of the property taken, that is, the instruction invited the jury to ignore the fair market value of the property involved and determine the damages for its specified and exclusive use as a parking lot."

## III

The property involved here is located on the west side of Eighth Avenue North in Nashville, between Church and Union Streets and extends back westwardly to Ninth Avenue North.

On September 14, 1956 an order was entered on motion of the petitioner directing the issuance of a writ of inquiry of damages and appointing a jury of view pursuant to Code, sec. 23-1407 et seq., T. C. A. Subsequently a second jury of view was appointed to assess the damages of Nashville Parkrite, Inc., which had leased the land for a term of ten years ending March 15, 1960. The property owners and the lessee both excepted to and appealed from the reports of the respective juries of view.

By consent, it was subsequently ordered that the proceedings for the taking of the interest of the owners and of the lessee be consolidated and tried together and the jury instructed to return a single verdict for the combined interests of all defendants.

The purpose of the proceeding was to acquire a right-of-way for a boulevard in connection with the Capitol Hill Redevelopment Project participated in by the State of Tennessee and the Federal Government. The property taken was triangular in shape leaving an irregular shaped parcel fronting on Eighth Avenue North and running back to a retaining wall extending from the margin of the new boulevard upward to the surface of the land in question.

The case was heard in the First Circuit Court of Davidson County at the May Term of 1959 and, as hereinabove stated, the jury reported that just compensation to the

defendants, including incidental damages, was $180,000, of which $129,700 represented the value of the property taken, and $50,300 represented incidental damages to the remainder.

The trial Judge entered an order to the effect that he was dissatisfied with the verdict rendered and suggested a remittitur of $15,000, as hereinabove stated, and in this same order it was directed that if the suggestion be accepted, the motion for a new trial would be overruled and judgment entered for $165,000 plus interest at 6% per annum from December 21, 1956 which was the date on which the first report of the jury of view was filed.

## IV

We will consider first the assignments on behalf of the petitioner, City of Nashville, which are directed at the charge to the jury.

There was considerable conflict in the evidence offered by the petitioners as against that offered by the defendants, particularly with regard to the amount of damages awarded.

For example, the five real estate men, who testified as experts as to values, fixed the amount of damages suffered in varying amounts as follows:

| "Witness | | Amount of Difference |
| --- | --- | --- |
| 1. Kavanaugh | (Witness for Defendants) | 216,400 |
| 2. Gibson | (Witness for Defendants) | 198,900 |
| 3. Bryan | (Witness for Defendants) | 190,100 |
| 4. Welch | (Witness for Petitioner) | 143,150 |
| 5. Armistead | (Witness for Petitioner) | 123,628" |

It is insisted by petitioners that the defendants tried to impeach the testimony of Mr. Armistead, much of which was uncorroborated, by a vigorous and lengthy cross-examination. It is asserted that, in addition to attempting to impeach his testimony insofar as the amount of damage was concerned, they also attempted to impeach his testimony by showing that it could not be reconciled with certain traffic records of the State of Tennessee, and that, by their cross-examination, they sought to leave the impression with the jury that this witness was not even familiar with the property involved.

It is also pointed out that the defendants offered considerable testimony as to the best use of the property remaining and which testimony was to the effect that about the only use for which it is suited is for private parking and that its size, shape and location render it unsuitable for a building site. However, they vigorously cross-examined Mr. Armistead in an effort to impeach his testimony to the effect that the property is still suitable and valuable for building purposes.

Mr. Frank Welch, the other witness for the petitioners as to values, uses, etc., and who qualified as an expert real estate appraiser, was also vigorously cross-examined and at length by attorneys for the defendants.

It is to be noted that in the brief and argument of the defendants it is stated that that jury were well warranted in disregarding Mr. Armistead's testimony entirely and that the trial Judge erred in believing, if he did so, that he should take it into consideration in appraising the jury verdict, because, it is pointed out, the condemning authority might always attempt to produce one or two witnesses to testify to very low figures, and, on the con-

trary, the property owners might always attempt to produce one or two witnesses to testify to very high figures, on the theory that all figures given by all witnesses would ultimately be averaged to arrive at the result. And it is stated by counsel for defendants in their brief and argument, ''The party who produces honest witnesses who testify fairly and reasonably should not be penalized.''

As to *assignment No. 1*, hereinabove quoted, it is urged by counsel for the city that it was reversible error for the trial Judge to instruct a jury that it is their duty to disregard entirely the uncorroborated testimony of a witness who may be found to have sworn falsely upon a material matter because this is a violation of the constitutional provision which reserves exclusively to the jury the function of determining the weight of the evidence.

In the assignment only one sentence was copied from the charge of the Court. The entire instructions concerning this subject were as follows:

''One mode of impeaching a witness is by rigid cross examination to involve him in contradictions, and discrepancies regarding matters involved in the lawsuit about which he has testified. Immaterial contradictions and discrepancies in the testimony of a witness do not necessarily affect his credibility unless there is something to show that they originate in wilful falsity. The jury cannot and must not wilfully disregard the testimony of any witness unless it plainly appears he or she has wilfully sworn to a falsehood involving material matters involved in the case. When it appears that a witness has thus falsely testified, you will disregard his or her evi-

dence entirely except for such portions which are corroborated by other reliable and credible proof."

In Tennessee Central R. Co. v. Morgan, 132 Tenn. 1, 175 S. W. 1148, it was held that where a jury believe that a witness has sworn falsely and corruptly in one material respect, they *may* disregard the evidence altogether, except in so far as it is corroborated by other credible evidence but an instruction that "You will reject his testimony altogether" was equivalent to "shall" or "must" and is erroneous as withdrawing from the jury all the evidence which they might deem of the character indicated and denying the parties the constitutional right of trial by jury.

It was also said in Railroad v. Morgan that such an error was not harmless, within chapter 32 of the Acts of 1911, providing that no verdict shall be set aside or new trial granted for error in the charge, or any error, unless it affirmatively appears that it has affected the result of the trial.

In said opinion it was also said that such an error in an instruction as to the credibility of a witness testifying falsely in one material particular was equivalent to the withdrawal of evidence of such character and amounted to a deprivation of the constitutional right of trial by jury which makes it the duty of the Supreme Court to consider it as if it had been properly assigned, although it was not.

In the Morgan case, the language which the court found to be reversible error was as follows [132 Tenn. 1, 175 S. W. 1153]:

"If a witness be shown to have sworn willfully, falsely, and corruptly in one material respect, you will reject his testimony altogether, except in so far as it is corroborated by other credible evidence."

In the case at bar, the language used and which is assigned as error is as follows:

"When it appears that a witness has thus falsely testified, you will disregard his or her evidence entirely except for such portions which are corroborated by other reliable and credible proof."

In Frierson v. Galbraith, 80 Tenn. 129, the Court pointed out that it was error to instruct the jury that they would or should disregard the evidence of a witness who had been shown to have sworn falsely.

The defendants below say that this assignment should be overruled because (1) in the case at bar, there is no dispute about the material facts, but only as to values; and (2) that the trial Judge was merely attempting to declare the law with the respect to the maxim 'falsus in uno, falsus in omnibus" and (3) that Railroad v. Morgan, supra, is not applicable because in the Morgan case the Court was dealing with the wrongful death of a person where conflicts in the evidence were manifest, while in the case at bar the material facts are not in dispute but only opinion evidence is in dispute; (4) it is argued that the case of Garland v. Mayhall, 17 Tenn. App. 449, 68 S. W. (2d) 482, is authority for the position of defendants; and, (5) that the harmless error statute applies to this case because there is no constitutional right to a trial by a jury in an eminent domain proceeding.

■ It is true that in determining whether a witness has given a false statement or not it is necessary to find that the statement involves a question of fact and not merely one of opinion. But we agree with counsel for the petitioner that the question whether a witness does or does not have a given opinion, as stated in his testimony, is, in itself, a factual question. As was stated in Clift v. White, 12 N.Y. 519, 538, "The state of a man's mind is as much a fact as the state of his digestion".

If a witness gives as his opinion that a piece of property is worth $10,000 when, as a matter of fact, he believes that the property has a value of $20,000, his testimony is as false as any other testimony dealing with facts.

In Railroad v. Morgan, supra, it was pointed out by the Court in discussing a similar assignment, that "Of course, we cannot say as to which one of the witnesses the jury may have thought that the charge was applicable. But we do know, as shown by the record, very strong attacks were made by plaintiffs below on the evidence of the engineer, the fireman, and the flagman Blakeley, the vital witnesses on the part of the railway company."

■ As is pointed out in 70 C. J. S. under the title Perjury sec. 5, p. 462, it is settled beyond controversy that in order to constitute perjury or false swearing the false statement must be one of fact, and not of opinion, and an honest but erroneous expression of opinion is not perjury. However, the existence or nonexistence of an opinion or belief is, in itself, a material matter of fact and the false statement of opinion or belief may constitute the offense.

In Haskins v. Howard, 159 Tenn. 86, at page 97, 16 S. W. (2d) 20, at page 23, the rule was stated as follows:

"And in Encyclopaedia of Pleading & Practice, vol. 8, p. 774, it is said: 'The general rule of evidence, that the weight of the testimony, as distinguished from its competency or admissibility, is for a jury, applies equally to the testimony of expert witnesses, and consequently, in its instructions, it is a fundamental maxim that the court must jealously guard against trespassing in this respect upon the peculiar province of the jury.' To the same effect is Corpus Juris, Evidence, sec. 823,, vol. 23, p. 728."

We think the case of Garland v. Mayhall, 17 Tenn. App. 449, 68 S. W. (2d) 482, cited by counsel for defendants, is distinguishable from the case at bar in several particulars, one of which is, that the instruction there complained of was, "You would be warranted in disbelieving that testimony altogether, unless the witness be corroborated by other credible and reliable proof."

We think the words used, "You would be *warranted* in disbelieving" are not the equivalent of, "You *will* disregard". Furthermore, it was said by the Court of Appeals that the charge had to do with an immaterial matter, which is not true in the case at bar.

It is vigorously asserted by the defendants that the harmless error statute applies because there is no constitutional right to a trial by a jury in Tennessee in an eminent domain proceeding. We think this is an important consideration with respect to the assignment which is now under discussion.

■ It is universally held that a litigant's right of trial by jury, whether guaranteed by the constitution or provided by statute, should be jealously guarded by the Courts. See 31 Am. Jur., Jury, sec. 7, p. 13.

In Johnson v. Nelms, 171 Tenn. 54, 100 S. W. (2d) 648, 651, the rule laid down in 16 Ruling Case Law, page 194 was quoted with approval as follows:

"The constitutional right to a trial by jury applies only to cases in which the prerogative existed at common law, or was secured by statute at the time the constitution was adopted."

When our present constitution went into effect on May 5, 1870, the right of trial by jury in eminent domain proceedings had been provided for by the Code of 1858, which is now carried in our Tennessee Code Annotated as Section 23-1418. The section was carried in the Code of 1858 as section 1342. It was carried forward in Shannon's Code as section 1861 and in the Code of 1932 as section 3126.

Said section provides that either party may also appeal from the finding of the jury of view and, on giving security for costs, have a trial anew before a jury in the usual way.

Article XI, Section 1, of the Constitution of 1870 provides as follows:

"All laws and ordinances now in force and use in this State, not inconsistent with this Constitution, shall continue in force and use until they shall expire be altered or repealed by the Legislature; but ordinances contained in any former Constitution or schedule thereto are hereby abrogated."

■ Thus, we agree with counsel for the petitioner that the right of trial by jury in an eminent domain proceeding, being a right in existence by statute at the time of the adoption of the Constitution of 1870, can not be taken away by implication, but can only be taken away, if at all, by an express act of the legislature.

■ It is argued by counsel for the defendants that the right of trial by jury was guaranteed in the Constitution of Tennessee only in cases where this right existed prior to our earliest Constitution. We do not so construe the Constitution or the cases which have dealt with this subject.

■ It results that we think that the trial Judge committed reversible error in instructing the jury in the manner hereinabove complained of.

■ *Assignment No. 2,* presents a very close question.

The Court instructed the jury that there are two methods of computing the amount of compensation due the respondent as brought out in the testimony of the witnesses who testified. The first is the income basis, the second the comparable sales basis.

The Court then goes on to say,

"In either case the conditions that prevailed upon the date of taking must be the basis of his consideration. The most profitable probable use of the property under those conditions will determine the rental or sale value."

Then he reiterates,

"Your consideration of these values may be predicated on the income approach, or the comparable sales approach."

As to whether or not these instructions taken together with the entire charge could be said to have misled the jury as to the basis upon which their determination was to be made is, as we have stated above, a very close question, however, we think the above instructions were misleading to the jury and constitutes error.

## V

In view of the above conclusions it becomes unnecessary for us to pass on defendant's assignments regarding the remittitur.

Responding, however, to the Second Assignment of the defendants below to the effect that the Court erred in changing the date on which interest commenced to run from September 14, 1956 the date of the order directing the issuance of a writ of inquiry to December 21, 1956 which was the date on which the first report of the jury of view was filed, we agree with counsel that interest should have been allowed from the former date, that is, from the date of the original taking of the property as was held in Snowden v. Shelby County, 118 Tenn. 725, 102 S. W. 90. Also see Palatine Insurance Co. v. E. K. Hardison Seed Co., 42 Tenn. App. 388, 303 S. W. (2d) 742.

For reasons hereinabove stated, the judgment of the trial Court is reversed and the cause is remanded for a new trial.

The costs below will abide the judgment of the trial Court, the costs of appeal will be divided equally between the parties, plaintiff and defendants.

Reversed and remanded.

Hickerson and Humphreys, JJ., concur.