RUSTY JOLENE BEAL,       )
                            )
       Plaintiff/Appellee,     )      Appeal No.
                            )      01-A-01-9801-CV-00024
v.                         )
                            )      Davidson Circuit
JOHN DOE [and         )      No. 94C-4165
Tennessee Farmers Mutual   )
Insurance Company],      )
                            )
       Defendants/Appellants.  )
                            )

**FILED**

**October 21, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE BARBARA N. HAYNES, JUDGE




GEORGE M. ALLEN
Wischhof & Allen
110 Glancy Street, Suite 207
Goodlettsville, Tennessee 37072
     ATTORNEY FOR PLAINTIFF/APPELLEE




THOMAS H. PEEBLES
G. BRIAN JACKSON
Trabue, Sturdivant & DeWitt
511 Union Street
25th Floor, Nashville City Center
Nashville, Tennessee 37219
     ATTORNEYS FOR DEFENDANTS/APPELLANTS




AFFIRMED AND REMANDED




WILLIAM B. CAIN, JUDGE

# OPINION

This is an appeal by Tennessee Farmers Mutual Insurance Company and an unknown motorist alleged to be uninsured pursuant to the provisions of Tennessee Code Annotated section 56-7-1201(e).

Rusty Jolene Beal filed suit against James M. Sloan as driver, and William Sloan as owner of a vehicle which struck plaintiff vehicle in the rear on White Bridge Road, Nashville, Tennessee January 2, 1994. The allegations asserted proximate negligence, family purpose doctrine and injuries to the plaintiff.

Beal was insured by Tennessee Farmers Mutual Insurance Company under a policy providing $50,000 per person liability limits and $100,000 per accident limits. The same limits were applicable to uninsured or underinsured motorists.

Process was served on Tennessee Farmers Mutual under Tennessee Code Annotated section 56-7-1206, and on February 8, 1995, Tennessee Farmers answered admitting the policy of insurance and the limits therein and claimed subrogation of $9,317.01 under the provisions of its medical pay clause. In this answer Tennessee Farmers demanded a jury of twelve to try the cause and provided further:

> Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") files this answer pursuant to T.C.A. § 56-7-1201, et seq., and specifically reserves the right to defend in its own name or in the name of the alleged uninsured/underinsured motorist, pursuant to T.C.A. § 56-7-1206.

In the original complaint Beal charged that the negligence of James Sloan ". . . constituted the sole and proximate cause of the accident . . ."

On April 6, 1995, defendants Sloan filed an answer to the original complaint admitting that the negligence of James M. Sloan was a proximate

cause of the automobile accident but denying that such negligence was a proximate cause of the injuries alleged by the plaintiff. In this answer defendants Sloan demanded a jury of twelve to try the action just as Beal had demanded such a jury in the original complaint.

On May 23, 1996, defendants Sloan filed an amended answer asserting that an unknown driver of a vehicle had abruptly stopped ahead of plaintiff, thus forcing plaintiff to abruptly stop and at least partially causing defendant Sloan to strike plaintiff's vehicle in the rear. Thus, defendant Sloan sought through comparative fault to allocate part of the responsibility to the unknown driver of the unknown vehicle. Sloan reiterated his demand for a twelve person jury to try the cause.

On May 24, 1996, Tennessee Farmers Mutual amended its answer by adding the following:

> 15. Alternatively, this accident was proximately caused by the negligence of an unknown driver, who caused the plaintiff to stop abruptly and unexpectedly. The negligence of the unknown driver was the sole proximate cause of any injuries to the plaintiff. Alternatively, the negligence of the defendant Sloan, if any, should be compared with that of the unknown driver and/or the plaintiff, according to the principles of comparative fault.

On July 5, 1996, plaintiff filed her first amended complaint making the unknown driver a "John Doe" defendant and seeking judgment against both the Sloan defendants and the unknown driver, John Doe.

On June 23, 1997, Tennessee Farmers Mutual filed an answer to the amended complaint acknowledging its defense of John Doe and again demanding a twelve person jury to try the cause.

Tennessee Farmers made a tactical decision not to participate in the trial of the case, acting pursuant to Tennessee Code Annotated section 56-7-1206(a)(1994). **See generally McCall v. Maryland Casualty Co.**, 516 S.W.2d 353 (Tenn. 1974).

When the case came on for trial on the jury docket on June 25, 1997, only counsel for the plaintiff Beal and counsel for the defendants Sloan appeared for trial.

Counsel for these parties in the voluntary absence of counsel for Tennessee Farmers waived their respective demands for trial by jury and proceeded with a bench trial. At the close of the plaintiff's proof, the defendants Sloan settled with plaintiffs and the bench trial continued between plaintiff and the unknown motorist. Counsel for Tennessee Farmers appeared before the completion of the proof and demanded that a jury be impaneled in accordance with Tennessee Farmer's demand for a jury in its pleadings. Such demand was denied by the trial court and the case taken under advisement as a bench trial.

On July 24, 1997, the trial court rendered its judgment in part as follows:

> Before the conclusion of the Plaintiff's proof, G. Brian Jackson, primary counsel for John Doe and TFMIC, appeared at Court. Immediately following completion of the Plaintiff's proof, said counsel objected in open court to trial of the case non-jury and reiterated his clients' demand that a jury be empaneled to hear the case. Counsel for the Plaintiff objected to the right of counsel for TFMIC, who was not present at the beginning of the trial, to later appear and contest the non-jury proceeding. Counsel for John Doe and TFMIC stated to the Court that those parties were not withdrawing and had never withdrawn their demand for a trial by jury.
>
> After hearing the statements of counsel for the Plaintiff and counsel for John Doe and TFMIC, the Court overruled the objection to the non-jury proceeding and announced that the cause would be taken under advisement and decided by the Court.
>
> Having considered the proof, giving due weight to the demeanor and credibility of the parties and the witnesses, and the entire record in the cause, the Court finds the following:
>
> > 1. The testimony of Defendant James M. Sloan, who was not then and there an occupant of Plaintiff's insured automobile, is clear and convincing evidence of the contributory fault of a John Doe driver in the case at bar.
> > 2. Rusty Jolene Beal reported the automobile accident at bar to the appropriate law enforcement agency, to-wit the Metropolitan Police Department, and was not negligent in failing to determine the identity of the John Doe driver.
> > 3. Total compensatory damages awarded to the Plaintiff for personal injuries proximately resulting from the automobile accident at bar are $44,750.00.

4. The comparative fault of all parties alleged to have contributed to causing the automobile accident at bar is apportioned as follows:

| | |
|---|---|
| James M. Sloan | 50% |
| John Doe | 50% |

Tennessee Farmers filed post-trial motions protesting the non-jury trial on a basis best articulated by the affidavit of attorney G. Brian Jackson, which accompanied the July 30, 1997 motion for a new trial. This affidavit provided in part:

2. The complaint in this case, which was filed on or around December 20, 1994, contained a jury demand. On or around, February 8, 1995, I filed an answer on behalf of Tennessee Farmers. The answer contained a jury demand. The named defendants, James Sloan and William Sloan answered on or around April 6, 1995. Their answer contained a jury demand. The case proceeded through discovery for more than a year and a half. I participated actively in the discovery, attending all depositions and participating in written discovery.

3. The plaintiff filed an amended complaint on July 29, 1996. Tennessee Farmers answered the amended complaint on June 23, 1997. This answer also contained a jury demand.

4. On or around November 25, 1996, the plaintiff moved to set the case for trial. The motion moved to set the case "on the jury trial docket...."

5. An agreed order was submitted to the court on around December 4, 1996, setting the case "for trial to a jury on June 25, 1997 at 9:00 a.m...."

6. Some settlement negotiations took place in the spring of 1996. Although I made an offer on behalf of my client, the parties were unable to agree to resolve the case.

7. After careful consideration, I made a tactical decision not to participate actively in the trial of the case. I knew the named defendants' attorney to be capable and was confident he would keep the plaintiff's damages low enough to avoid any underinsured motorist coverage exposure. Because Tennessee Farmers had a subrogation lien for medical payments, any underinsured exposure would require a verdict of at least $35,000. I believed a jury would be unlikely to award more than that amount. I also believed that the jury would be unlikely to assess any substantial percentage of fault to "John Doe" if "John Doe" was not represented at trial. For these and other tactical reasons, I determined not to participate actively in the jury trial. In underinsured motorist cases, it is relatively common for counsel to decide not to participate actively in trials.

8. On or around April 30, 1997, I sent a letter to the counsel for the named defendants informing him that I did not intend to participate actively in the jury trial. I spoke with counsel for the named defendants on June 18, 1997, again telling him that I would not be participating in

the trial and discussing his strategy for defending the case at the jury trial.

9. On June 19, 1997, I spoke to counsel for the plaintiff and informed him that I would not be participating actively in the jury trial.

10. On or around June 23, 1997, I received proposed jury instructions from the named defendants.

11. On June 24, 1997, I received a telephone call from the Court concerning scheduling of the jury trial. I informed the Court that I would not be actively participating in the trial, although I did expect to monitor portions of it.

12. When I left the office on the afternoon of June 24, 1997, it was my understanding that this case would be tried to a jury beginning on June 25, 1997. At that time, the case had been designated as a jury case for two and a half years. I had informed all parties and the Court that I did not intend to participate in the trial of the case. At no point had any party notified me of any intent to seek a nonjury trial, nor had any party or the Court suggested that my attendance at the trial would be necessary in order to ensure that the case proceeded as a jury trial. Before [June] 25, 1997, the scheduled jury trial date, I never received any notice whatsoever of any request by any party for a nonjury trial.

13. I had not been notified of any substantive pretrial matters to be discussed before commencement of the jury trial. I expected that voir dire would begin at 9:00 a.m. on [June] 25. Since I did not believe my presence at voir dire to be necessary given the inactive role I was to play in the trial, I planned to go by the Courthouse in the late morning of [June] 25 to check on the progress of the trial.

14. On the a.m. of [June] 25, 1997, I left my home sometime between 8:30 and 9:00 a.m. I had to run an errand on the way to the office and I arrived at my office in downtown Nashville around 9:15 or 9:20 a.m. After I arrived, Thomas H. Peebles III told me that he received a call from the Court a few minutes earlier and had been informed that the other parties were attempting to waive the jury trial. Mr. Peebles told me that he had told the Court that a nonjury trial would not be appropriate because Tennessee Farmers had demanded a jury.

15. I telephoned the Court and spoke to one of the judge's court officers. She told me, "We tried to call you. The case is being tried." I asked the court officer whether the case was being heard by the Court or a jury. She indicated that a bench trial was in progress. I told her that Tennessee Farmers objected to such a proceeding, that a jury had been demanded, and that I would be at the courthouse immediately.

16. I spoke to Thomas H. Peebles III for a few minutes and left my office and went to the Davidson County Courthouse as quickly as possible. By the time I cleared security and actually arrived in the courtroom, it was, to the best of my recollection, approximately 10:00 a.m. or shortly after 10:00 a.m.

17. When I arrived in the courtroom, plaintiff's counsel was concluding his examination of the plaintiff. Neither the named defendants nor their counsel was present in the courtroom. Plaintiff's counsel briefly examined another witness.

-6-

18. Following the plaintiff's proof, I approached the bench and objected to the case being heard as a nonjury matter. The Court overruled my objection and announced that the case would be taken under advisement.

The July 30, 1997 motion for a new trial by Tennessee Farmers and John Doe was overruled by the trial court on January 2, 1998 and these parties appealed.

On appeal, Tennessee Farmers complains that having demanded trial by a jury of twelve in its pleadings, trial by jury cannot be waived without its consent. Appellant relies on Tennessee Rule of Civil Procedure 38.05 providing in part, "A demand for trial by jury as herein provided may not be withdrawn without the consent of all parties as to whom issues have been joined." Tenn. R. Civ. P. 38.05 (1997-98).

Appellant further relies on Tennessee Rule of Civil Procedure 39.01 providing:

When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (a) the parties or their attorneys of record, by written stipulation filed with the court or by oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (b) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the state of Tennessee.

Tenn. R. Civ. P. 39.01 (1997-98).

In this case, all parties had demanded trial by jury. When "John Doe" was made a defendant by amended complaint pursuant to T.C.A. § 56-7-1201(e) Tennessee Farmers filed an answer on behalf of 'John Doe' and demanded a jury. After participating in discovery Tennessee Farmers made a tactical decision not to appear at trial and not to participate in the trial. This decision was predicated in part on T.C.A. § 56-7-1206(a) providing in part: "Such companies shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its

own name; . . ."

The basis of this decision is best stated by counsel for Tennessee Farmers in his affidavit:

> 7.  After careful consideration, I made a tactical decision not to participate actively in the trial of the case.  I knew the named defendants' attorney to be capable and was confident he would keep the plaintiff's damages low enough to avoid any underinsured motorist coverage exposure.  Because Tennessee Farmers had a subrogation lien for medical payments, any underinsured exposure would require a verdict of at least $35,000.  I believed a jury would be unlikely to award more than that amount.  I also believed that the jury would be unlikely to assess any substantial percentage of fault to "John Doe" if "John Doe" was not represented at trial.  For these and other tactical reasons, I determined not to participate actively in the jury trial.  In underinsured motorist cases, it is relatively common for counsel to decide not to participate actively in trials.

The dilemma confronting counsel for Tennessee Farmers in this case is obvious.  Prior to Chapter 313 of the Public Acts of 1989, now codified as Tennessee Code Annotated section 56-7-1201(e), there was no uninsured motorist coverage in the absence of physical vehicle contact.  The effect of the 1989 act is stated by the Supreme Court:

> . . . Prior to the 1989 amendment to Tenn.Code Ann. § 56-7-1201, there could be no recovery unless there was actual physical contact between the uninsured motorist's vehicle and the insured's vehicle.  *See e.g., Hoyle v. Carroll*, 646 S.W.2d 161 (Tenn.1983).  The requirement of physical contact with the vehicle operated by the unknown motorist prohibited recovery in cases where the unknown motorist caused the accident but there was no physical contact between the vehicles.  Subsection (e)(1)(B), enacted in 1989, allows recovery in cases where, for example, the insured is forced off the road by an unknown motorist without physically striking the insured's vehicle.  The high standard of proof required by the amendment, clear and convincing evidence produced by witnesses other than the occupants, obviously was intended by the legislature as a safeguard against bogus claims arising from one-vehicle accidents.  *Cf. id.* at 162.

*Fruge v. Doe*, 952 S.W.2d 408, 411 (Tenn. 1997).

Counsel for Tennessee Farmers would be representing an "empty chair" in front of they jury. The fear, real or imagined, is that the presence of counsel defending the empty chair will suggest to the jury the existence of liability insurance. It is also correct to say that counsel representing Sloan would attempt to keep the damages of the plaintiff as low as possible.

The other horn of Tennessee Farmers' dilemma under this post 1989 "John Doe" case is that the interest of counsel for Sloan and Tennessee Farmers is far from identical. It is Sloan who first asserted the existence of John Doe and under comparative fault principles sought a companion to share the misery. Plaintiff then amended his complaint to join "John Doe" with all parties fully aware that in order to prevail against John Doe, Tennessee Code Annotated section 56-7-1201, subsequent to 1989, required: "(B) The existence of such unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured vehicle."

Thus, it is evident long before the actual trial, that it is in the interest of the plaintiff to prove the existence of "John Doe" and, even more importantly, it is also very much in the interest of the defendant Sloan to prove both the existence of "John Doe" and the highest possible comparative fault of "John Doe".

Faced with these circumstances, counsel for Tennessee Farmers made his tactical decision not only to not participate in the trial of the case but also not to appear even as an observer. Thus, Tennessee Farmers deferred all trial decisions to counsel representing the defendants Sloan.

The right to trial by jury is constitutional and jealously guarded by the courts of Tennessee. *Shook & Fletcher Supply Co. v. Nashville*, 47 Tenn. App. 339, 338 S.W.2d 237 (1960).

It is likewise well settled in Tennessee that a party may either directly or by implication waive this constitutional right to trial by jury. *Russell v.*

*Hackett*, 190 Tenn. 381, 230 S.W.2d 191 (1950); *Davis v. Ballard*, 946 S.W.2d 816 (Tenn. Ct. App. 1996).

There is a marked division of authority among the federal courts and among sister jurisdictions bound by that which is equivalent to Rules 38 and 39 of the Tennessee Rules of Civil Procedure. The discussion in *Hall v. Morozewych*, 686 P.2d 708 (Alaska, 1984) is enlightening.

> Our Civil Rules 38(d) and 39(a) are functionally identical to their federal counterparts. Generally, if a defendant in federal court defaults after having properly demanded a jury trial, he may insist on a jury trial as to damage issues. Federal cases split on whether a party's nonappearance is tantamount to a waiver of jury trial on liability. Professors Wright and Miller take the position that "[f]ailure to appear, in person or by counsel, at the trial should be considered a waiver of jury trial". State case law demonstrates that the provisions of applicable statutes or rules control resolution of the jury trial waiver issue. State courts which have had occasion to apply statutes or rules similar to Alaska Civil Rules 38(d) and 39(a) (i.e.: where express consent is required for a waiver of a previously demanded jury trial) generally refuse to treat non-appearance as a waiver. Typical of such decisions is Loiselle v. Gladfelter, 160 So.2d 740 (Fla.App.), aff'd, 165 So.2d 767 (Fla.1964). In that case, the Florida Court of Appeals recognized the "divergent views of our sister states based upon their particular statutes or rules of procedure," and also acknowledged the split in federal authority. 160 So.2d at 742. Interpreting a rule of civil procedure that required "the consent of the parties" before a demand for jury trial could be withdrawn, the court concluded that "waiver by implication in these circumstances must be more than a mere failure to appear and contest the issues of the case." Id.
>
> Given the provisions of Civil Rules 38(d) and 29(a), and our ruling in Hill v. Vetter, 525 P.2d 529 (Alaska 1974), we hold that the superior court erred in trying this case without a jury. The judgment against Hall is set aside and the matter remanded to the superior court for a jury trial on the issues of liability and damages.

686 P.2d 708, 711-712 footnotes omitted.

Whatever may be the restrictions on implied waiver in federal courts and in other state jurisdictions, it is clear that Tennessee still follows *Russell v. Hackett*, 190 Tenn. 381, 230 S.W.2d 191 (1950). *Davis v. Ballard* is a 1996 decision of the Western Section of the Court of Appeals with application for permission to appeal having been denied by the Supreme Court on April 7, 1997. In this case, both Davis and Ballard had demanded a jury in their pleadings. Ballard failed to appear at trial and Davis waived his right to trial by jury and

proceeded with a bench trial. Ballard appealed. Said the Court of Appeals:

> [1] Ballard argues that he never agreed or consented to the case proceeding to trial without a jury, and that he did not waive his right to have his case heard and decided by a jury. Although the waiver of a jury demand requires the consent of all parties, that waiver may be either express or implied. *Russell v. Hackett*, 190 Tenn. 381, 230 S.W.2d 191, 192 (1950). In *Russell*, the Tennessee Supreme Court held that a co-defendant who did not appear at trial waived his right to a jury trial by implication. *Id.* The Supreme Court said, "Taylor (the co-defendant) having been properly brought before the trial court by service of process, did not appear and defend the suit. Therefore, his consent to the waiving of the jury was implied." *Id.* In that case, the plaintiff originally demanded a jury but waived that demand after the co-defendant failed to appear. The trial was conducted in his absence, and the judgment for unliquidated damages awarded by the trial court sitting without a jury was upheld. *Id.*

> [2] The law in 1950 required that both parties consent before demand for jury could be waived. The Supreme Court held that the failure to appear is an implied consent to the waiver of jury trial. *Id.* Our present law requiring all parties to consent to waiver of a previous jury demand, Tenn.R.Civ.P. 38.05, is the same that existed when the Supreme Court decided *Russell.* Therefore, we must follow the Supreme Court's ruling in *Russell.* In the instant case, Ballard did not appear at trial, "[t]herefore, his consent to the waiving of the jury was implied." *Id.*

> [3] Ballard also argues that there can be no implied waiver because of the circumstances of this case. Ballard's counsel claims that he extended Davis's counsel common courtesy by allowing him to continue the trial when it was first scheduled. When the case was called the second time, Davis proceeded without Ballard. Ballard asserts that Davis's counsel should have returned the favor. Davis's attorney argued that Ballard had procrastinated and delayed the trial, and that he felt it was time to zealously represent his client. While we believe that professional courtesy should be the norm of our profession, there is nothing legally wrong with the actions of Davis's counsel.

> Accordingly, the judgment of the trial court is affirmed, and the case is remanded for such further proceedings as are necessary. Costs of the appeal are assessed against the appellant.

*Davis v. Ballard*, 946 S.W.2d 816, 817 (Tenn. App. 1996).

In this case Tennessee Farmers made a tactical decision not only to forego any actual participation in the trial but, in effect, to abdicate all defense responsibility to counsel representing Sloan. In its brief counsel poses an hypothesis:

> . . . For economic and strategic reasons, uninsured motorist carriers often elect not to participate directly in trials. For example, consider the following hypothetical situation: a plaintiff in an automobile accident case alleges $3,000 in

medical expenses and prays for $100,000 in damages. She carries $100,000 in uninsured/underinsured motorist insurance. She sues the driver of the other vehicle involved in the accident and serves her own uninsured motorist carrier with the complaint. The named defendant driver has minimal $25,000 limits and is defended by able counsel. Under this scenario, the uninsured motorist carrier theoretically is exposed to a potential $75,000 in damages (the difference between the named defendant's liability limits and the plaintiff's underinsured limits). However, the carrier may determine that it is highly unlikely that the plaintiff will recover more than $25,000 for a claim based on $3,000 in medical expenses. The carrier may further decide that adding another lawyer to the defense team will simply increase the likelihood that the jury will divine the existence of substantial insurance and increase the plaintiff's award accordingly. Finally, the carrier would be required to incur a significant expense if its counsel participated in the trial, expense that might not be worth the slight risk of loss and might actually be harmful. Therefore, the UM carrier in such a case might appropriately decide to monitor the case but to take no active role in the trial.

This hypothetical scenario is extremely common. In each UM case, the UM carrier must determine the level of participation appropriate for the particular case and the risks involved. Often the carrier's counsel will attend depositions and selected portions of the trial but will not sit at counsel table or otherwise taken an active role before the jury.

This hypothesis assumes correctly that the interest of counsel representing the defendant driver on behalf of his own liability carrier has the same interests in the case as the non-participating, underinsured carrier. The hypothetical is meaningless when applied to counsel for the defendants Sloan whose interest parallels the uninsured motorist carrier interest only to the extent that both would seek to hold the plaintiff's damages to a minimum. Counsel for the underinsured Sloan has a vital interest in transferring comparative fault to "John Doe", an interest inimical to the interest of Tennessee Farmers representing John Doe. The first and foremost duty of counsel for Sloan was to take care of the interest of Sloan. This he did by waiving his demand for trial by jury and settling with the plaintiff. These actions left unchallenged the testimony of defendant James M. Sloan that provided the basis for the trial court finding comparative fault of John Doe. The court specifically found: "1. The testimony

of defendant James M. Sloan, who was not then and there an occupant of plaintiff's insured automobile, is clear and convincing evidence of the contributory fault of a John Doe driver in the case at bar."

The record does not disclose any agreement among counsel not to withdraw their respective jury demands.

The tactical decision not to participate in the trial by Tennessee Farmers and not to monitor the case when the trial began effectively left counsel for plaintiff and counsel for defendants Sloan to their own devices and the appearance of counsel for Tennessee Farmers after the jury had been waived by all counsel electing to participate in the trial comes too late.  The reasoning of *Russell v. Hackett* and *Davis v. Ballard* is persuasive under the facts of this case.

Tennessee Farmers also objects to the action of the trial court in assessing discretionary costs against Tennessee Farmers.  This is a matter in the sound discretion of the trial judge and this court sees no abuse of discretion. *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56 (Tenn. 1992).

The judgment of the trial court is in all respects affirmed, and the case is remanded for such further proceedings as are necessary.  Costs are assessed to appellants.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE