# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### NOVEMBER 8, 2001 Session

## CHARLES KENDALL DUTY, ET AL. v. FARAH DABIT, ET AL.

### Direct Appeal from the Circuit Court for Sumner County
### No. 16596-C; The Honorable C. L. Rogers, Judge

---

### No. M2001-00586-COA-R3-CV - Filed March 26, 2002

---

This appeal involves a suit brought by the purchasers of a new home. The seller and purchaser entered into a contract of sale, wherein the seller agreed to construct a home on a parcel of real property. Having no construction experience, the seller hired a contractor to construct the home. Upon the completion of the home and closing on the property, the purchasers discovered numerous defects that were allegedly caused by a failure to construct the home in a workmanlike manner. The purchasers filed suit against the seller and the contractor. The seller and the contractor hired an attorney, but the attorney eventually withdrew from the case. Four months after the attorney's withdrawal, the case proceeded to trial. The seller, acting *pro se*, arrived at the trial several hours late. By the time the seller had arrived, the contractor and purchaser had completed *voir dire* and the contractor had been dismissed through a judgment on the pleadings. With the trial judge acting as finder of fact, the trial proceeded and a judgment was entered against the seller in the amount of $22,182.84. After the trial, in an attempt to amend his pleadings to assert a cross-claim against the contractor, the seller moved the court for a new trial or to set aside the judgment. The trial court denied the seller's motion and for the following reasons, we affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Bruce N. Oldham, Gallatin, TN, for Appellant

R. Price Nimmo, Rabin P. Nimmo, Nashville, TN, for Appellees

## OPINION

## Facts and Procedural History

Farah Dabit ("Mr. Dabit") owned a parcel of real property located at 108 Garland Avenue in White House, Tennessee. In 1995, Mr. Dabit decided to sell the property and listed it for $15,500.00 with Jim Brinkley ("Mr. Brinkley"), a local realtor. On September 1, 1995, with Mr. Brinkley serving as the real estate agent, Mr. Dabit entered into a contract with Charles and Michelle Duty ("the Dutys") to sell the property.

The contract between Mr. Dabit and the Dutys, however, encompassed more than just the sale of the property. The contract also indicated that Mr. Dabit would construct a home for the Dutys on the property prior to closing. The contract set the purchase price for the property and the home at $85,900 and designated the closing to be on or before January 30, 1996. The contract also indicated that Mr. Dabit would execute a one-year warranty on the home upon its completion.

Because Mr. Dabit had no construction or contracting experience, he decided to hire a contractor to build the home. Mr. Dabit, the Dutys, and Mr. Brinkley met with Liz Esson ("Ms. Esson"), a representative from Genesis Residential and Commercial Construction, Inc. ("Genesis"), to discuss construction of a home on the property. Soon after the meeting, Mr. Dabit hired Genesis to construct the home. Allegedly, Genesis was the only contractor able to meet the price specifications in the contract.

Genesis completed construction of the home in 1996. After several failed attempts, final closing on the property occurred on April 17, 1996. In accordance with the contract, Mr. Dabit's attorney-in-fact executed a Warranty of Completion of Construction in favor of the Dutys during the closing process that named Mr. Dabit warrantor of the home.

Upon moving into the home, the Dutys discovered numerous defects allegedly caused by Genesis' failure to construct the home in a workmanlike manner. The Dutys sent a letter to Ms. Esson dated May 13, 1996 outlining many of the alleged defects. The letter asserted that at least twenty-four distinct defects in the home existed. Ms. Esson and the Dutys spoke several times about correcting the repairs, but many of the defects remained unrepaired.

On May 7, 1997, the Dutys filed a complaint against Mr. Dabit and Genesis in the Circuit Court for Sumner County at Gallatin. The Dutys' complaint alleged that Mr. Dabit and Genesis had breached their contractual duties and were in violation of the Tennessee Consumer Protection Act based on the defective condition of their new home. The complaint sought damages for approximately forty-one problems with the home: some original defects and others arising from the failure to repair the original defects. The Dutys also sought treble damages and attorney's fees pursuant to section 47-18-109 of the Tennessee Code.

Mr. Dabit and Genesis soon retained attorney David Kleinfelter ("Mr. Kleinfelter") to represent them in the matter. Mr. Kleinfelter filed an answer on behalf of both Mr. Dabit and Genesis on September 15, 1997. Recognizing possible conflicts of interest, however, Mr. Kleinfelter informed Mr. Dabit and Genesis in a letter dated September 15, 1997 that if the case proceeded to a full trial, he would have to withdraw as counsel for both parties because of his ethical duties. Due to the progression of the litigation and possibly the nonpayment of fees[1], on November 13, 1998, an order was entered permitting Mr. Kleinfelter to withdraw as counsel for the defendants.

More than four months after Mr. Kleinfelter's withdrawal, on March 16, 2001, the matter proceeded to trial. The proceedings were scheduled to take place in Gallatin, Tennessee. On the day of trial, however, Mr. Dabit mistakenly went to the circuit court in Nashville instead of Gallatin even though he had been given proper notice of the proceedings. By the time he arrived in Gallatin, Genesis and the Dutys had completed *voir dire* and Genesis had been dismissed through a judgment on the pleadings. The trial judge asked Mr. Dabit, who was proceeding *pro se*, if he wanted a jury to try the matter. Mr. Dabit responded "[m]aybe it doesn't matter - go ahead." Counsel for the Dutys then acknowledged their desire to dismiss the jury, and the trial proceeded with the trial court acting as finder of fact.

The trial court ruled in favor of the Dutys. In support of its ruling, the court made several findings of fact and conclusions of law. Notably, the court found that Mr. Dabit had contracted with Genesis to build the home and that no contract existed between Genesis and the Dutys. In addition, the court found many of the defects in the home complained of by the Dutys remained unrepaired. Accordingly, under contract law and because of Mr. Dabit's warranty on the home, the court concluded that Mr. Dabit was liable to the Dutys for repair of the defects and awarded the Dutys $22,182.84 in compensatory damages.

On June 9, 1999, Mr. Dabit filed a Motion for New Trial or to Set Aside Judgment. In his motion, Mr. Dabit requested that the court set aside the order granting Genesis a judgment on the pleadings and grant him leave to amend his answer to assert a cross-claim against Genesis. The court, in denying Mr. Dabit's motion, ruled that Mr. Dabit had no standing to contest the order dismissing Genesis and refused to grant him leave to assert a cross-claim. Mr. Dabit now appeals raising five issues for review.

**Issues**

I.      Whether the trial court erred in holding that Mr. Dabit lacked standing to challenge the entry of judgment on the pleadings with respect to Genesis;

---

[1] The record is not entirely clear on the reasons for Mr. Kleinfelter's withdrawal. While we can surmise that the conflict of interest played a role in his decision to withdraw, a letter dated October 28, 1998 from Mr. Kleinfelter to Mr. Dabit also indicates that previously earned fees remained unpaid and played a role in the decision.

II.     Whether the trial court erred in granting Genesis's motion for judgment on the pleadings;

III.    Whether the trial court erred in refusing to grant Mr. Dabit leave to amend his pleadings to assert a cross-claim against Genesis for breach of contract and indemnity;

IV.     Whether the trial court denied Mr. Dabit the right to a trial by jury; and

V.      Whether the trial court erred in failing to give Mr. Dabit an opportunity to present his case after the Dutys rested their case.

## Standard of Review

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the factual findings below. Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); Tenn. R. App. P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

## Law and Analysis

With regard to the first issue, Mr. Dabit argues that the trial court erred in holding that he lacked standing to challenge the entry of the judgment on the pleadings with respect to Genesis. Standing is a judge-made doctrine employed by courts to deny the resolution of a legal controversy when the party seeking redress "is not properly situated to prosecute the action." Knierim v. Leatherwood, 542 S.W.2d 806, 807 (Tenn. 1976). Generally, for a party to show that it has standing in order to prosecute a case, several basic elements must be present: a distinct and palpable injury, a causal connection between the injury and the challenged conduct, and a remedy available to address the injury. In re Youngblood, 895 S.W.2d 322, 326 (Tenn. 1995); Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville and Davidson County, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992); Morristown Emergency and Rescue Squad, Inc. v. Volunteer Dev. Co., 793 S.W.2d 262, 263 (Tenn. Ct. App. 1990). Mr. Dabit argues at length that these elements are present in the case *sub judice* and, accordingly, that he has standing to challenge Genesis' dismissal from the case.

We disagree with Mr. Dabit's reasoning. Generally, the issue of standing is raised in an attempt to deny a claimant the opportunity to prosecute a claim, seek injunctive relief, or protect a secured right. Consequently, much of the case law surrounding the issue of standing contemplates the extinguishment of a claim or denial of a right allegedly held by the claimant. Here, Mr. Dabit never brought a claim against Genesis. Further, Mr. Dabit has failed to adequately articulate a personal right that would be improperly denied by Genesis' dismissal from the proceeding. Not surprisingly, the cases concerning standing cited by Mr. Dabit are unrelated to the issue of standing as presented in this case.

-4-

Mr. Dabit, instead of attempting to prosecute a claim or protect a right held by him, has attempted to step into the shoes of the Dutys to prosecute *their* claim against Genesis. No claim or right held by *Mr. Dabit* was improperly threatened by Genesis' dismissal. Accordingly, under these circumstances, we hold that the trial court did not err in finding that Mr. Dabit lacked standing to challenge the dismissal of the Dutys' claim against Genesis. Because we affirm the trial court's decision to deny Mr. Dabit the ability to prosecute a claim held by the Dutys, Mr. Dabit's second issue concerning the merits of the trial court's decision to award Genesis a judgment on the pleadings is pretermitted.

With regard to the third issue, Mr. Dabit argues that the trial court erred in refusing to grant him leave to amend his pleadings to assert a cross-claim against Genesis for breach of contract and indemnity. Rule 15.01 of the Tennessee Rules of Civil Procedure governs the availability of amendments to pleadings. Rule 15.01 states that after a matter has been set for trial, the pleadings of a party may only be "amended by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires." Tenn. R. Civ. P. 15.01.

Although decisions to grant leave to amend pleadings lie within the sound discretion of trial courts, courts are bound by Rule 15.01's contemplation of a liberal policy to "freely" grant leave "when justice so requires" . Hall v. Shelby County Ret. Bd., 922 S.W.2d 543, 546 (Tenn. Ct. App. 1995). Our supreme court has given several nonexclusive factors courts should consider when determining whether or not to grant leave to amend : 1) a party's undue delay in filing the motion to amend, 2) the absence of notice to an opposing party, 3) bad faith, if any, harbored by the moving party, 4) repeated failures to correct the alleged problems with previous amendments, 5) undue prejudice to the party opposing the amendment, and 6) the futility of the motion. Gardiner v. Word, 731 S.W.2d 889, 891-92 (Tenn. 1987) (citations omitted). Mr. Dabit asserts that the only factor working against his favor is the factor concerning undue delay. Mr. Dabit further asserts that according to this Court's ruling in Corroon & Black Ben., Inc. v. Lexington Ins. Co., No. 01-A-019010CH00369, 1991 WL 122881, at *3 (Tenn. Ct. App. July 10, 1991), undue delay is only one factor to be considered by a trial court and should not, by itself, bar amendments to a pleading.

Our opinion in Corroon, while insightful, is not dispositive of the outcome in this case. In Corroon, this Court allowed a party to amend its cross-claim seven days before a hearing was to be held on whether the counter-claim should be dismissed for failure to state a claim. We held, as argued by Mr. Dabit, that under the circumstances of that case, "undue delay" was not a sufficient basis by itself to deny the party's request to amend.

Here, however, we are presented with a far different pattern of events. Mr. Dabit chose not to pursue a counter-claim against Genesis until after entry of the final judgment, which held him liable to the Dutys for their full damages. Although we recognize the liberal policy of allowing amendments to claims, we also recognize the importance of maintaining finality to litigation. Not surprisingly, our review of Tennessee precedent fails to reveal any cases authorizing amendments

to pleadings under rule 15.01 after the entry of a final judgment.[2] Accordingly, under the circumstances of this case, we hold that the trial court did not abuse its discretion by denying Mr. Dabit's motion for leave to amend his pleadings to assert a cross-claim against Genesis.

With regard to the fourth issue, Mr. Dabit alleges that he was denied his constitutional right to have the contested factual issues in this case tried by an impartial jury. Mr. Dabit's arguments center around Article I, Section 6 of the Tennessee Constitution, which guarantees "that the right of trial by jury shall remain inviolate. . . ." Tenn. Const. Art. I, § 6.

Mr. Dabit argues that Article I, Section 6 of our Constitution has been violated by the trial court's failure to observe Rules 38.05 and 47.01 of the Tennessee Rules of Civil Procedure. Rule 38.05 provides that once a jury has been demanded, the demand "may not be withdrawn without the consent of all parties as to whom issues have been joined." TENN. R. CIV. P. 38.05. Rule 47.01 provides that the "court shall permit the parties or their attorneys to conduct the examination" of jurors. TENN. R. CIV. P. 47.01. Mr. Dabit alleges that because he never properly consented to having the matter tried without a jury and was not allowed to participate in *voir dire*, these rules were violated resulting in a denial of his constitutional rights.

We disagree with Mr. Dabit's assertions. After a jury has been demanded, waiver of the right to a jury may occur either directly or by implication. Beal v. Doe, 987 S.W.2d 41, 47 (Tenn. Ct. App. 1991). Direct waiver of a jury may occur "by written stipulation filed with the court or by oral stipulation made in open court and entered in the record.. . ." TENN. R. CIV. P. 39.01(a). Waiver by implication can occur when a party fails to attend a hearing to defend the suit after proper notice of the hearing has been given. Davis v. Ballard, 946 S.W.2d 816, 817 (Tenn. Ct. App. 1996) (citing Russell v. Hackett, 230 S.W.2d 191, 192 (Tenn. 1950)).

Upon review of the record, we find that Mr. Dabit's statements were sufficient to effectively waive his right to have the matter tried before a jury. At the hearing, the trial judge asked Mr. Dabit, "We'll see, now do you want a jury to try this or do you want me to try it?" To this question, Mr. Dabit responded, "Maybe it doesn't really matter - go ahead." (Tr., Vol. II, p. 6-7) We find it important that Mr. Dabit employed the language, "go ahead." By his choice of words, Mr. Dabit instructed the trial judge to proceed. When viewing this statement with the question posed, we find that it was obvious that Mr. Dabit wanted the trial judge to proceed in trying the matter instead of having a jury try the matter.

Further, immediately after Mr. Dabit's response, the trial judge asked R. Price Nimmo, counsel for the Dutys, "Alright - what about it Mr. Nimmo?" Mr. Nimmo responded, "Your Honor I certainly would be glad to waive the jury and let Your Honor hear the case." The trial judge

---

[2] We note that Tennessee Rule of Civil Procedure 15.02 recognizes Amendments to Conform to Evidence, "even after judgment." Under rule 15.02, however, amendments are only allowed for, "issues not raised by the pleadings [that] are tried by express or implied consent of the parties." Mr. Dabit does not raise this as an argument, nor do we find rule 15.02 to be applicable to the present case.

continued, "Alright, this gentleman is waiving the jury too and we will be able to start for the truth." Soon after, the trial proceeded without a jury. This exchange clearly shows that both parties as well as the trial judge understood Mr. Dabits' responses as a waiver of his right to a jury. We also note that in addition to Mr. Dabit's obvious intent to have the judge try the matter, he also failed to indicate at any point in the proceedings that the true meaning of his response was to demand a jury. Instead, Mr. Dabit took part in the proceedings with the trial judge sitting as trier of fact without objection.

Mr. Dabit also argues that Rule 47.01 was violated because he was not allowed to participate in *voir dire*. We disagree with Mr. Dabit's assertions here as well. Mr. Dabit was not "denied" the opportunity to participate in *voir dire*. Instead, Mr. Dabit arrived at the court house late, after *voir dire* had been completed, even though he had been given proper notice of the proceedings. Further, Mr. Dabit never objected to the fact that he was not present to participate in the jury selection process at the hearing. In conclusion, we hold that neither Rule 38.05 nor Rule 47.01 were violated and, accordingly, that Mr. Dabit's constitutional rights were not denied.

With regard to the fifth issue, Mr. Dabit argues that the trial court erred in failing to give him an opportunity to present his case after the Dutys rested their case. The basis of Mr. Dabit's argument is that he was denied "a full and fair opportunity to present evidence in own defense." Before discussion of this issue, we feel compelled to note the inherent difficulties that often arise when parties attempt to proceed *pro se*. In Irvin v. City of Clarksville, 767 S.W.2d 649, 651-52 (Tenn. Ct. App. 1988), the Middle Section of this court noted the following observation from Judge Blackburn on *pro se* litigants:

> Of course this status of affairs presents a tremendous burden for the Judge of the Court to carry in first seeing that the litigation is conducted in an orderly fashion and second that the parties are given every opportunity to present their grievances for resolution. Such requires great skill on the part of the Judge both intellectually and diplomatically.

The trial transcript clearly indicates that Mr. Dabit had little or no knowledge of trial procedure. Accordingly, these inherent difficulties should be considered in our determination of whether Mr. Dabit was allowed the opportunity to present a full and fair defense at the hearing.

Our review of the record indicates that the trial judge made many efforts to ensure that Mr. Dabit had the opportunity to defend himself in this suit. The record is abundantly clear that the trial judge gave Mr. Dabit the opportunity to cross-examine every witness called by the defense. The record also indicates that Mr. Dabit attempted to testify himself immediately following Mr. Duty's testimony. The trial judge allowed Mr. Dabit the opportunity to explain several of the defects and then instructed Mr. Dabit that he would be given the opportunity to testify further at the proper time. That opportunity was given after he was called as a witness and answered questions posed by counsel for the Dutys.

It is clear from the record, however, that Mr. Dabit chose to offer little testimony and had no evidence to present. Mr. Dabit made no indication that he wanted to call any witnesses or present any further proof. Because Mr. Dabit was given the opportunity to examine the Duty's witnesses, testified in his own behalf, and gave absolutely no indication that he intended to offer further proof or call additional witnesses, the trial judge acted properly in ruling on the case. Accordingly, we find Mr. Dabit's argument that he was not given the opportunity to defend himself in this suit to be without merit.

## Conclusion

Based on the foregoing conclusions, we hereby affirm the decision of the circuit court. Costs on appeal are assessed against Appellant, Farah Dabit, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE